987 F.2d 564
 UNITED STATES of America, Plaintiff-Appellee,
v.
Linda Marie CONKINS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alfredo Amador BARRAGAN, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alberto Valencia BARRAGAN, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert Leroy SANDVIG, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jacqueline Louise FOGEL, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Richard Robert FARMER, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Salvador SOTO-MENDOZA, Defendant-Appellant.
 Nos. 91-10306, 91-10307, 91-10310, 91-10314, 91-10322,
91-10323 and 91-10373.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 14, 1992.
Decided Feb. 18, 1993.
 
 Barry Nix, Fresno, CA, for defendant-appellant Conkins.
 Margaret A. McKnight, Fresno, CA, for defendant-appellant Sandvig.
 Anthony P. Capozzi, Fresno, CA, for defendant-appellant Fogel.
 Stephen Mensel, Fresno, CA, for defendant-appellant Farmer.
 Patrick K. Hanly and Kevin P. Rooney, Asst. U.S. Attys., Fresno, CA, for plaintiff-appellee.
 Appeal from the United States District Court for the Eastern District of California.
 Before: HUG, PREGERSON, and WIGGINS, Circuit Judges.
 PREGERSON, Circuit Judge:
 
 
 1
 Appellants were convicted of multiple counts of importation of a controlled substance, in violation of 21 U.S.C. § 952 and 18 U.S.C. § 2, and possession of a controlled substance with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. In addition, all appellants with the exception of Linda Conkins and Robert Sandvig were convicted of conspiracy to import and distribute a controlled substance, in violation of 21 U.S.C. §§ 952(a), 963, 841(a)(1), and 846.
 
 
 2
 Linda Conkins and Salvador Soto-Mendoza appeal their jury convictions. In addition, Alfredo Barragan, Jacqueline Fogel and Richard Farmer appeal their sentences under the Sentencing Guidelines. Alberto Barragan and Robert Sandvig appeal both their convictions and sentences.
 
 
 3
 We vacate the sentences of Alberto and Alfredo Barragan, Jacqueline Fogel, and Richard Farmer and remand to the District Court for resentencing in accordance with this opinion. We affirm the convictions and sentences on all other grounds.
 
 I. BACKGROUND
 
 4
 According to evidence presented by the government at trial, all appellants were involved in a conspiracy to smuggle marijuana into the United States. The conspiracy spanned more than 18 months and included 26 separate shipments of marijuana.
 
 
 5
 Appellants Alfredo Barragan, his brother Alberto Barragan, and Salvador Soto-Mendoza organized the smuggling trips. They and others recruited couriers to travel to Mexico in motor homes, which were then loaded with marijuana and driven back into the United States. Appellants Richard Farmer, Jacqueline Fogel, and Linda Conkins made some of these trips. Appellant Robert Sandvig met the couriers in El Paso, Texas, where he helped them arrange their trips into Mexico.
 
 
 6
 Conkins and Sandvig were separately indicted in the Western District of Texas on multiple counts related to smuggling trips in June and July 1989. Each pleaded guilty to one substantive count. In exchange, the government dismissed the remaining counts, including all conspiracy charges.
 
 
 7
 After these pleas were entered, Conkins, Sandvig, and ten others were indicted in the Eastern District of California on importation, possession, and conspiracy charges. Five of these defendants agreed to testify for the government. Conkins and Sandvig moved successfully to dismiss the conspiracy charge on double jeopardy grounds, but were convicted on substantive charges. The remaining defendants were convicted on both substantive and conspiracy charges.
 
 II. EFFECT OF THE TEXAS PLEA AGREEMENTS
 A. Specific Enforcement
 
 8
 Conkins contends here, as she did below, that the filing of Counts 12 and 13 of the indictment (for importation and possession of marijuana) violates a plea agreement she entered in the related case from the Western District of Texas (the "Texas agreement"). The district court determined that it did not, and we review for clear error a district court's construction of a plea agreement. United States v. Fernandez, 960 F.2d 771, 772 (9th Cir.1991).
 
 
 9
 The Texas agreement provided that in return for Conkins's guilty plea on one substantive charge, a second substantive charge and two conspiracy charges would be dismissed. The agreement contains no mention of a bar to prosecutions for related conduct not charged in that first indictment. Thus, the district court properly concluded that the Texas agreement did not bar the charges filed against Conkins in the instant case.
 
 B. Collateral Estoppel
 
 10
 In a similar vein, Sandvig contends that his prosecution under the entire indictment is barred by collateral estoppel. Specifically, he argues that the dismissal of two conspiracy counts pursuant to the Texas agreement constitutes a determination on the merits that now bars any prosecution for the constituent overt acts of those two conspiracies.
 
 
 11
 Sandvig did not raise this issue below. "As a general rule, we will not consider an issue raised for the first time on appeal." United States v. Flores-Payon, 942 F.2d 556, 558 (9th Cir.1991). However, because this issue presents a pure question of law, we can and do reach it. See id. (court of appeals will consider an issue raised for the first time on appeal when "the issue presented is purely one of law").
 
 
 12
 In some circumstances, the dismissal of an indictment may be a ruling on the merits that collaterally estops further prosecution under the same charge. United States v. Cejas, 817 F.2d 595, 598-99 (9th Cir.1987). However, this rule is inapplicable here because the conspiracy charges dismissed in the Texas case are distinct from the substantive charges under which Sandvig now stands convicted. See United States v. Felix, --- U.S. ----, ----, 112 S.Ct. 1377, 1384, 118 L.Ed.2d 25 (1992) ("a substantive crime, and a conspiracy to commit that crime, are not the 'same offense' for double jeopardy purposes.").
 
 
 13
 Thus, the doctrine of collateral estoppel does not bar Sandvig's prosecution under the substantive counts in this case.
 
 III. VINDICTIVE PROSECUTION
 
 14
 Sandvig also contends that his indictment in this case was the result of "vindictive prosecution." Due process of law is violated when the government vindictively attempts to penalize a person for exercising a protected statutory or constitutional right. United States v. Goodwin, 457 U.S. 368, 372, 102 S.Ct. 2485, 2488, 73 L.Ed.2d 74 (1982).
 
 
 15
 In contrast with Sandvig's double jeopardy challenge, a claim of "vindictive prosecution" presents primarily factual questions of government motive. However, Sandvig did not raise this issue below, and therefore there is no evidence in the record to support his contention. Therefore, this issue does not present any of the exceptional circumstances that warrant a departure from our rule barring consideration of an issue raised for the first time on appeal. See Flores-Payon, 942 F.2d at 558 (listing exceptions to the rule against reaching issues raised for the first time on appeal). Accordingly, we do not reach this issue.
 
 IV. ADMISSION OF EVIDENCE
 A. Hearsay
 
 16
 Alberto Barragan contends that the district court erred by admitting evidence of a recorded telephone conversation between two co-conspirators because the challenged statements were not made during or in furtherance of the conspiracy.
 
 
 17
 Even assuming the court erred by admitting this evidence, such error was harmless. The inculpatory statement, i.e., that a Barragan brother sent witness Kim Lavish to Mexico to import drugs, was introduced by the direct non-hearsay testimony of Lavish herself.
 
 B. Subsequent Bad Acts
 
 18
 Sandvig contends that the district court erred in admitting evidence of other "bad acts" because (1) this evidence was not probative of any material issue and (2) the prejudicial effect of the evidence outweighed its probative value.
 
 
 19
 Because Sandvig objected to the introduction of this evidence, we review for abuse of discretion the trial court's decision to admit the evidence. United States v. Catabran, 836 F.2d 453, 459 (9th Cir.1988).
 
 
 20
 The district court applied the proper test and concluded that evidence of Sandvig's other marijuana smuggling conduct was admissible under Fed.R.Evid. 404(b) to establish knowledge, intent, and motive. The district court also expressly found that the prejudicial effect of the evidence did not substantially outweigh its probative value. The district court did not abuse its discretion in admitting this evidence.
 
 V. SUFFICIENCY OF THE EVIDENCE
 
 21
 Conkins, Alberto Barragan, Sandvig, and Soto-Mendoza challenge the sufficiency of the evidence to support their convictions. We must sustain a conviction if " 'after reviewing the evidence in the light most favorable to the prosecution, [we conclude that] any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992), citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).
 
 A. Conkins
 
 22
 Conkins contends that there is insufficient evidence to support her convictions for possession and importation of marijuana in February or March 1989 (Counts 12 and 13). In particular, Conkins claims there is (1) no evidence that the motor home used on that trip carried marijuana and (2) only minimal evidence to establish that she knew the motor home was carrying marijuana on that trip.
 
 1. Evidence of Marijuana in the Motor Home
 
 23
 The record contains circumstantial evidence that the motor home trips organized by the Barragans and Soto-Mendoza were made exclusively for the purpose of importing marijuana. This evidence, viewed in the light most favorable to the prosecution, was sufficient to support the jury's finding that marijuana was present on the trip from which Conkins's convictions arose.
 
 2. Evidence of Knowledge
 
 24
 Conkins's subsequent arrest for smuggling marijuana into the United States in June 1989 constitutes evidence that she had knowledge of the presence of marijuana in the motor home during the earlier trip. See United States v. Bibo-Rodriquez, 922 F.2d 1398, 1402 (9th Cir.) (evidence of similar, subsequent "bad act" is admissible as evidence to establish knowledge on an earlier occasion), cert. denied, --- U.S. ----, 111 S.Ct. 2861, 115 L.Ed.2d 1028 (1991). In addition, there is evidence that the circumstances surrounding the trips to and from Mexico were highly suspicious. For example, after entering Mexico, Conkins and Abney were flagged down by two men on a bridge in a remote location. They permitted the men to board the motor home, drive them to Playa Azul, and leave them at a motel. The men returned the motor home to them several days later, at which time Conkins and Abney returned to the U.S. Together, this evidence supports a conclusion that Conkins knew that the motor home contained marijuana.
 
 
 25
 Thus, the record contains sufficient evidence to support Conkins's convictions on Counts 12 and 13.
 
 B. Sandvig
 
 26
 Sandvig challenges the sufficiency of the evidence that he actually possessed marijuana under Counts 5 and 7 or that marijuana was imported in the instances that formed the bases of Counts 2 through 7.
 
 1. Possession of Marijuana (Counts 5 and 7)
 
 27
 The record contains evidence that Sandvig instructed couriers in the October 1988 smuggling trip underlying Count 5 to drive to Mexico and to call "David" when they arrived. In addition, there is evidence that Sandvig provided money and instructions to Kim Lavish and Stephan Weiland, the couriers in the November 1988 smuggling trip underlying Count 7.
 
 
 28
 This evidence is sufficient to sustain Sandvig's conviction as an aider and abettor of the couriers' possession. See U.S. v. Savinovich, 845 F.2d 834, 838 (9th Cir.1988) (to sustain a conviction for aiding and abetting, "it is enough that the defendant associate with the criminal venture, participate in it, and seek by actions to make it succeed.").
 
 
 29
 2. Presence of Marijuana (Counts 2 through 7)
 
 
 30
 The evidence shows that the drivers on the trips that formed the bases of Counts 2 through 7 each received $3,000 to $5,000 for making the trips. Kim Lavish, a driver on one of these trips, testified that she was told the trips were to smuggle marijuana. She further testified that Sandvig was present when she was assured that she would be helped in the event authorities found marijuana in the motor home. As the district court correctly concluded, it was reasonable for the jury to infer from this evidence that the trips giving rise to Sandvig's convictions on Counts 2 through 7 were for the sole purpose of smuggling marijuana, and that therefore marijuana was in fact smuggled on these trips.
 
 C. Alberto Barragan
 
 31
 Alberto Barragan challenges the sufficiency of the evidence to support his convictions on Counts 21 and 22. Because Barragan did not renew his Rule 29 motion at the close of evidence, we review only for plain error. See United States v. Mora, 876 F.2d 76, 77 (9th Cir.1989).
 
 
 32
 There is ample evidence to show that Alberto Barragan participated in a conspiracy to import and distribute marijuana. In addition, the evidence shows that the trips underlying Counts 21 and 22, and organized by co-conspirator Alfredo Barragan, were in furtherance of this conspiracy. Thus the evidence suffices to support Alberto Barragan's conviction on these counts under a theory of co-conspirator liability. See United States v. Vasquez, 858 F.2d 1387, 1393 (9th Cir.1988), cert. denied, 488 U.S. 1034, 109 S.Ct. 847, 102 L.Ed.2d 978 (1989).
 
 D. Soto-Mendoza
 
 33
 Soto-Mendoza also challenges the sufficiency of the evidence to support his convictions. Specifically, Soto-Mendoza contends that the evidence is insufficient to (1) establish his identity; (2) establish that the couriers had knowledge of marijuana on the trips; or (3) that marijuana was actually imported on those trips. Because Soto-Mendoza also failed to renew his Rule 29 motion at the close of evidence, we again review only for plain error. See Mora, 876 F.2d at 77.
 
 
 34
 Government witness Alisha Goss testified that she was "good friends" with Soto-Mendoza, that he had told her about preparations he made for the smuggling conspiracy, and that Soto-Mendoza paid her to make smuggling trips. In addition, government witnesses Paul Woodmansee and Betty Ashford testified that Soto-Mendoza helped arrange the trips underlying the convictions in Counts 12, 13, and 19 through 22. Finally, the two trips underlying Counts 19 through 22 ended in the apprehension of couriers in possession of hundreds of pounds of marijuana.
 
 
 35
 Based on this evidence, a rational trier of fact could conclude beyond a reasonable doubt that Soto-Mendoza in fact was the person who participated in the smuggling conspiracy, that he had knowledge of marijuana being smuggled across the border, and that marijuana was in fact smuggled across the border in the trips that form the basis for each of his convictions.
 
 VI. SENTENCING ISSUES
 
 36
 A district court's interpretation and application of the sentencing guidelines are reviewed de novo. United States v. Navarro, 979 F.2d 786, 787-88 (9th Cir.1992). Constitutional challenges to the guidelines are reviewed de novo. United States v. Brady, 895 F.2d 538, 539 (9th Cir.1990). Challenges to the legality of a sentence are reviewed de novo; a district court's findings of fact are reviewed for clear error. United States v. Turner, 898 F.2d 705, 708 (9th Cir.1990).
 
 A. Sandvig's Sentence
 
 37
 Sandvig argues that the district court erred in imposing a 48-month sentence consecutive to the 70-month sentence he is now serving on the related conviction in Texas.
 
 
 38
 Based on the quantity of drugs imported in the three trips for which Sandvig was convicted in this case, the district court calculated an imprisonment range under the Guidelines of 70 to 87 months. However, the court granted a downward departure to 48 months in recognition of Sandvig's 70-month sentence for the Texas conviction. As a result, Sandvig stands sentenced to a combined term of 118 months.
 
 
 39
 Sandvig contends, in effect, that U.S.S.G. § 5G1.3 required the court to impose a sentence concurrent to his sentence for the Texas conviction, but adjusted to reflect the combined total of drugs for which he was convicted in both cases. The version of U.S.S.G. § 5G1.3 in effect when Sandvig's sentence was imposed authorized the district court to impose Sandvig's sentence concurrently or consecutively. U.S.S.G. § 5G1.3, Commentary (as amended November 1, 1990). The district court chose the latter course. Although a later amendment to this section makes mandatory the imposition of a concurrent sentence under the circumstances of this case, see U.S.S.G. § 5G1.3(b) (as amended November 1, 1991), this amendment does not retroactively invalidate the sentence imposed on this defendant.
 
 
 40
 Sandvig also argues that the district court's imposition of the consecutive 48-month sentence resulted in an unreasonable upward departure. Sandvig notes that the quantity of drugs chargeable to him in both cases would produce a guidelines range of 87 to 108 months, and points out that his total sentence of 118 months exceeds the maximum by ten months. However, the calculation of what a combined, concurrent sentence would have been is irrelevant because the court imposed a consecutive sentence. Instead of constituting an upward departure, the 48-month sentence imposed in this case actually represents a downward departure from the guideline range of 70 to 80 months.
 
 
 41
 Therefore, Sandvig's sentence is not the product of a misapplication of U.S.S.G. § 5G1.3 or of an unwarranted upward departure.
 
 
 42
 B. Constitutionality and Statutory Authority of the Relevant
 
 Conduct Guidelines
 
 43
 Alfredo and Alberto Barragan argue that Guideline sentencing based on uncharged crimes violates the Constitution and is without statutory authorization.
 
 
 44
 The Barragans concede that United States v. Restrepo, 946 F.2d 654 (9th Cir.1991) (en banc), cert. denied, --- U.S. ----, 112 S.Ct. 1564, 118 L.Ed.2d 211 (1992), disposes of their constitutional argument and have raised the issue only to preserve it for possible Supreme Court review. However, the Barragans ask us to hold that the United States Sentencing Commission exceeded its statutory authority in drafting § 1B1.3(a)(2) to require sentencing based on uncharged crimes, citing United States v. Galloway, 943 F.2d 897 (8th Cir.1991), rev'd en banc, 976 F.2d 414 (1992); United States v. Miller, 910 F.2d 1321, 1329-30 (6th Cir.1990) (Merritt, J., dissenting), cert. denied, --- U.S. ----, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991).
 
 
 45
 The original panel in Galloway held that "the United States Sentencing Commission exceeded its statutory authority in promulgating the uncharged conduct provisions of section 1B1.3(a)(2) to encompass separate [and factually distinct] property crimes." 943 F.2d at 899. However, in this case, the Barragans were convicted of conspiracy to import and distribute marijuana, and their sentences were calculated based on an estimate of the total quantity of drugs imported pursuant to that conspiracy rather than on the basis of any uncharged substantive crimes. See Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946) (a conspirator is liable for all acts committed by co-conspirators during the course of and in furtherance of the conspiracy). As a result, the Barragans would obtain no relief even if this court were to adopt the holding of the original panel in Galloway.
 
 
 46
 Because federal courts are not authorized to issue advisory opinions, we do not reach this issue.
 
 
 47
 C. Failure to Make Express Factual Determinations under
 
 U.S.S.G. § 1B1.3
 
 48
 Both the Barragans, as well as Fogel and Farmer, contend that the district court erred in failing to make express findings that each of the smuggling trips counted as relevant conduct for each defendant and therefore is in fact chargeable to each defendant under § 1B1.3 of the Guidelines.
 
 
 49
 Under the Application Note 1 to § 1B1.3, the sentencing court may only sentence a defendant for relevant conduct within the scope of the defendant's agreement that was reasonably foreseeable in connection with the criminal activity the defendant agreed to undertake jointly. U.S.S.G. § 1B1.3, Application Note 1 (as amended November 1, 1990); United States v. Navarro, 979 F.2d 786, 788-89 (9th Cir.1992) (remanding for resentencing where district court failed to make express factual findings to support its use of total drug sales in sentencing a co-conspirator).
 
 
 50
 In response to arguments made by Alberto Barragan's counsel at the sentencing hearing, the district court stated that
 
 
 51
 there's no question about who--who the three people were that were generally arranging [the trips]. Sometimes only one was involved, sometimes two were involved, and in one trip, I think all three [were involved], or at least their names were mentioned as being involved.
 
 
 52
 R.T. (June 3, 1991) 22. This general and conclusory statement falls short of the specificity required under § 1B1.3. See Navarro, at 789-90 (quoting a similarly general statement by the district court in that case).
 
 
 53
 Furthermore, the court made no findings at all with respect to the relevant conduct charged to Alfredo Barragan, Fogel, and Farmer. The failure to make express findings as to defendants Fogel and Farmer may have had serious consequences. The evidence in the record demonstrates their involvement in no more than three or four of the alleged 26 trips made in the larger conspiracy. A finding that the scope of Fogel's and Farmer's agreement was limited to the trips they actually made could reduce the mandatory minimum sentence for each of them from ten to five years.
 
 
 54
 On remand, the district court must expressly determine by a preponderance of the evidence whether the scope of Fogel and Farmer's agreement to import and distribute marijuana extended beyond the shipments in which their involvement has been documented, and which additional shipments were reasonably foreseeable in connection with such agreement. See U.S.S.G. § 1B1.3, Application Note 1.e. (as amended November 1, 1990) (noting that agreement to offload one shipment of marijuana does not make defendant accountable for prior or subsequent shipments by co-conspirators). The court must also make such findings with respect to the chargeability of each of the 26 trips to Alfredo and Alberto Barragan.
 
 D. Rule 32
 
 55
 Fogel and Farmer also contend that the district court erred by failing to make written findings regarding their contentions that they withdrew from the conspiracy as of December 1988.
 
 
 56
 "When a defendant challenges information contained in his presentence investigation report, the district court must make [written] findings of fact concerning any disputed matter which it relies upon in sentencing." United States v. Turner, 898 F.2d 705, 709 (9th Cir.), cert. denied, 495 U.S. 962, 110 S.Ct. 2574, 109 L.Ed.2d 756 (1990); Fed.R.Crim.P. 32(c)(3)(D). "Strict compliance with Rule 32(c)(3)(D) is required and failure to comply will result in the case being remanded." Turner, 898 F.2d at 709.
 
 
 57
 On remand, the district court shall make the appropriate written findings with respect to Fogel and Farmer's challenges to the ending date of their conspiracy.
 
 E. Downward Departure
 
 58
 Finally, Fogel also argues that her minor role as a "mule" in the conspiracy constitutes a mitigating circumstance warranting downward departure.
 
 
 59
 Fogel was sentenced to the statutory minimum based on a total drug quantity of more than 1,000 kilograms. "[W]hen a statute requires a sentence different than that set by the guidelines, the statute controls." United States v. Sharp, 883 F.2d 829, 831 (9th Cir.1989); U.S.S.G. § 5G1.1(b). Because the statutes under which Fogel was convicted carry a ten-year mandatory minimum, the district court's failure to grant a downward departure is not error.
 
 VII. CONCLUSION
 
 60
 The sentences of Alfredo Barragan, Alberto Barragan, Jacqueline Fogel, and Richard Farmer are vacated and remanded for resentencing. In determining the appropriate sentence for each of these defendants, the district court must make express findings under § 1B1.3 of the guidelines based on a preponderance of the evidence. In calculating the base offense level, the court may not include conduct that is "not within the scope of [each respective] defendant's agreement" or not "reasonably foreseeable in connection with the criminal activity [each] defendant agreed to jointly undertake." In addition, the court must make express written findings under Fed.R.Crim.P. 32(c)(3)(D) as to each matter in the presentence report that the defendants dispute.
 
 
 61
 The convictions and sentences of all defendants are affirmed on all other grounds.
 
 
 62
 AFFIRMED in part and REVERSED in part.