78 F.3d 596
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert Leroy SANDVIG, Defendant-Appellant.
 No. 94-10155.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 8, 1996.
Decided Feb. 28, 1996.
 
 1
 Before: SCHROEDER and TROTT, Circuit Judges, and REED, District Judge*.
 
 
 2
 MEMORANDUM**
 
 
 3
 Robert Leroy Sandvig appeals the sentence imposed by the district court following his conviction. We vacate the sentence and remand the case for resentencing.
 
 I. Facts and proceedings below
 
 4
 Sandvig was involved in a marijuana smuggling venture which lasted more than 18 months and involved 26 shipments. See United States v. Conkins, 9 F.3d 1377 (9th Cir.1993). In March 1990, he was indicted in the Western District of Texas on three counts, and pled guilty to importation; the other counts were dropped. The factual basis for the plea was Sandvig's role in an importation which ended on July 4, 1989. He was also involved in an importation which took place on June 18, 1989. This was deemed part of the same "scheme or plan" as the July 4 importation, and Sandvig was held accountable for it. He was held responsible, then, for the importation of a total of 206 kilograms of marijuana, and sentenced to a 70-month term.
 
 
 5
 In May 1990, Sandvig was indicted again on multiple counts, all relating to his participation in the marijuana importation scheme, in the Eastern District of California. He was convicted of six charges, all relating to importation or possession with intent to distribute. Though the smuggling operation involved a total of 26 separate shipments, Sandvig was charged, convicted and sentenced in California on the basis of three smuggling shipments made between June and November of 1988.[1] His offense level was set at 26, with a guideline range of 70 to 87 months.
 
 
 6
 None of the shipments on which the California conviction and sentence were based had been charged in the Texas indictment or counted as relevant conduct in the calculation of Sandvig's Texas sentence. The Texas and California smuggling trips were, however, part of the same scheme and plan. Sandvig was sentenced in California in June 1991. The 1990 version of U.S.S.G. § 5G1.3 (see U.S.S.G.App. C am. 385) was in effect at the time. It allowed the district court to impose a concurrent or a consecutive sentence, and provided that the court
 
 
 7
 may consider imposing a sentence for the instant offense that results in a combined sentence that approximates the total punishment that would have been imposed ... had all of the offenses been federal offenses for which sentences were being imposed at the same time.
 
 
 8
 Id. (emphasis added).[2] Had the Texas and California cases been combined, and had Sandvig therefore been sentenced for importing a total of 455 kilograms of marijuana (206 in Texas and 249 in California), he would have faced a guideline range of 87 to 108 months. Sandvig was sentenced to 48 months, to be served consecutively to the 70-month term imposed in Texas.
 
 
 9
 On appeal, this court held that the trial court had not violated the 1990 guideline. That guideline allowed the trial court to impose a concurrent or a consecutive sentence, and because the court imposed a consecutive sentence, "the calculation of what a combined, concurrent sentence would have been" was irrelevant. Conkins, 9 F.3d at 1385. The sentence was nevertheless vacated and the case remanded. While the district court had not violated the guideline, it had failed to state adequate reasons for its sentence, as required by 18 U.S.C. § 3553. Id. The omission was especially troubling, this court observed, because the total sentence imposed exceeded by ten months the guideline range Sandvig would have faced had all the offenses been combined and sentences imposed at once. It therefore conflicted with the "congressional concern for avoiding unwarranted sentencing disparities," a concern which in this case "would militate in favor of a combined sentence" based on the total quantity of marijuana underlying the Texas and California convictions. Id. at 1385-86.
 
 
 10
 The presentence report prepared for the initial sentencing was used again at the resentencing in February 1994. The court stated that it was not bound by the new sentencing guidelines and would not apply them, and again sentenced Sandvig to a term of 48 months, to be served consecutively to the term imposed in Texas. The court explained that
 
 
 11
 while I may not have been very articulate or clear what the Court was doing, the Court was satisfied to reach what the Court felt was an appropriate sentence. The way to reach that conclusion without wondering how the two were going to fit each other, was to give the--the reduced sentence and make it consecutive for the reason that there were matters in this case that weren't in the other case. There may have been some overlap in the other case, and I was just trying to set forth what I thought was an appropriate sentence. But it doesn't seem to me that there should be a reward for being convicted of matters that were not involved in some other case and not having to pay any penalty for it. Yet, on the other hand, it seemed to me that there was--there was an appropriate reason for departure because some of it may well have been involved. Now, that's how I arrived at it. I could have stated 70 months and made that consecutive.
 
 
 12
 A notation on the judgment explained that, while the conduct underlying the Texas and California convictions was all part of the "same scheme and plan," this sentence was necessary to "punish conduct not taken into consideration in the Texas case." Sandvig appeals, arguing that the district court erred by not applying the guideline in effect at the time of resentencing, and by not stating sufficient reasons for the sentence imposed.
 
 II. Section 3553
 
 13
 The trial court's explanation of the sentence it imposed did not meet the requirements of 18 U.S.C. § 3553. First, that explanation was not specific enough to satisfy § 3553(c), which requires the district court, "at the time of sentencing," to "state in open court the reasons for its imposition of the particular sentence." When the case first came up on appeal, this court deemed the district court's statement at Sandvig's first sentencing (that the charges tried in California "were not the subject of the charges in Texas") too "cryptic" to satisfy to satisfy § 3553(c). See Conkins, 9 F.3d at 1385-86. The district court's explanatory statement at Sandvig's resentencing (that there were matters in the California case which were not part of the Texas case) and its notation on the judgment (that the sentence was necessary to punish Sandvig for conduct not taken into account in the Texas case) are no more illuminating.
 
 
 14
 Second, the district court in this case had to choose between consecutive and concurrent sentences. Under 18 U.S.C. § 3584, the court therefore had to consider the factors listed in 18 U.S.C. § 3553(a). Those factors include
 
 
 15
 (1) the nature of the offense, (2) goals of imprisonment, (3) kinds of sentences available, (4) the sentence recommended under the guidelines, (5) Sentencing Commission policy statements, and (6) the need to avoid unwarranted sentence disparities.
 
 
 16
 Conkins, 9 F.3d at 1385. The district court did not discuss these factors at Sandvig's resentencing, and the transcript of the resentencing gives no indication that it considered them.
 
 III. The applicable guideline
 
 17
 The district court also applied the wrong version of the sentencing guidelines at Sandvig's resentencing. The district court's interpretation and application of the Guidelines are reviewed de novo. United States v. Redman, 35 F.3d 437, 438 (9th Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 922, 130 L.Ed.2d 802 (1995). The relevant guideline is § 5G1.3, which applies when a court sentences a defendant already subject to an undischarged term of imprisonment.
 
 
 18
 Section 5G1.3 shows up in a new and surprising form almost every November. See U.S.S.G. § 5G1.3 (Nov. 1995); Redman, 35 F.3d at 440-41. For present purposes, it suffices to note that, "absent an ex post facto problem, the district court must apply the version of the Sentencing Guidelines in effect on the date of resentencing." United States v. Canon, 66 F.3d 1073, 1077 n. 1 (9th Cir.1995). The 1993 version of § 5G1.3 was in effect when Sandvig was resentenced in February 1994. That version of the guideline was more favorable to defendants than was the 1987 version, which was in effect when Sandvig committed his crimes. Use of the 1993 version of § 5G1.3 in Sandvig's case would therefore not have presented an ex post facto problem, and, ipso facto, that version should have been applied at his resentencing.
 
 
 19
 The district court instead applied the 1990 version of § 5G1.3 at Sandvig's resentencing, just as it had at his initial sentencing. See Conkins, 9 F.3d at 1385. That version of the guideline gave the trial court "complete discretion to employ any method" it chose in determining the sentence. Redman, 35 F.3d at 441. By contrast, the relevant provision of the 1993 version suggested that the district court attempt to determine a "reasonable incremental punishment" for the defendant, and provided a "commentary methodology" for determining what that increment would be:
 
 
 20
 the court should consider a reasonable incremental penalty to be a sentence for the instant offense that results in a combined sentence of imprisonment that approximates the total punishment that would have been imposed ... had all of the offenses been federal offenses for which sentences were being imposed at the same time.
 
 
 21
 U.S.S.G.App. C am. 535. The district court had discretion to impose a harsher sentence, but could do so only after making certain determinations on the record.[3]
 
 
 22
 Thus the district court applied the wrong version of the guideline at Sandvig's resentencing. The error was not harmless. The district court may have known what the "reasonable incremental punishment" would be under § 5G1.3(c)'s "commentary methodology,"[4] but the reason it gave for the sentence imposed at the resentencing (that it was necessary to punish Sandvig for conduct not taken into account in the Texas case) did not constitute the statement of reasons which, under Redman, was necessary before the district court could impose a sentence other than the one which would result from use of the "commentary methodology." The district court's failure to make those findings requires that the sentence be vacated and the case remanded. See United States v. Garrett, 56 F.3d 1207, 1209 (9th Cir.1995).[5]
 
 IV. Conclusion
 
 23
 The district court's explanation for the sentence imposed at resentencing was not specific enough to satisfy § 3553(c) and did not address the factors which must be considered under § 3553(a). Also, the district court applied the wrong version of § 5G1.3 at Sandvig's resentencing.[6] Sandvig's sentence is therefore VACATED and the case is REMANDED for resentencing.
 
 
 
 *
 The Honorable Edward C. Reed, Jr., Senior United States District Judge, District of Nevada, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Only five of the 26 shipments were intercepted and seized. The three shipments underlying the California conviction were not seized, but some amount of marijuana had to be ascribed to them in order to determine Sandvig's base offense level. The probation officer therefore multiplied by three the smallest quantity which had been seized (83 kilos), and calculated that the three California shipments had involved a total of 249 kilograms
 
 
 [2]
 Neither party mentions the 1987 version of § 5G1.3, in effect between June and November of 1988, when Sandvig committed the offenses underlying his California conviction. That version provided that if "one or more of the instant offense(s) arose out of the same transactions or occurrences as the unexpired sentences," then the instant sentences and the unexpired sentences were to run concurrently. See U.S.S.G.App. C am. 289
 There are two likely explanations. First, the California marijuana shipments took place between June and November of 1988, and the Texas shipments in June and July of 1989. Thus, while the California and Texas shipments may have been part of the same "scheme or plan," they took place a year apart and in different states, and clearly did not arise out of the same "transactions or occurrences." See United States v. Miller, 903 F.2d 341, 343 (5th Cir.1990) (robberies on different days in different places not part of the same transaction or occurrence under § 5G1.3). Second, even if all the shipments had been part of the same transactions or occurrences, this court's decisions made clear that, despite the apparently mandatory language of the version of § 5G1.3 in effect at the time of Sandvig's offenses, the decision to impose a concurrent or consecutive sentence remained within the discretion of the trial judge, under 18 U.S.C. § 3584(a). See United States v. Burns, 894 F.2d 334, 337 (9th Cir.1990); United States v. Wills, 881 F.2d 823, 826 (9th Cir.1989). Under either version of the guideline, then, the judge had complete discretion when deciding between concurrent and consecutive sentences, and it therefore made no difference which version was applied.
 
 
 [3]
 The process was summarized as follows:
 the court must attempt to calculate the reasonable incremental punishment that would be imposed under the commentary methodology.... [I]f the court finds that there is a reason not to impose the suggested penalty, it may use another method to determine what sentence it will impose. The court must, however, state its reasons for abandoning the commentary methodology in such a way as to allow us to see that it has considered the methodology.
 Redman, 35 F.3d at 441 (emphasis added).
 
 
 [4]
 That penalty was calculated in the presentence report and was alluded to in argument at the resentencing
 
 
 [5]
 "[T]he district court should be given appropriate instructions" when a case is remanded. United States v. Carpenter's Goldfish Farm, 998 F.2d 692, 694 (9th Cir.1993). We therefore address Sandvig's argument that subsection (b) of the 1993 version of § 5G1.3 should have been applied to his case. That is incorrect. Section 5G1.3(b) provides that if
 the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment.
 The "undischarged term of imprisonment" in this case was the term imposed in Texas. That term resulted from two offenses: the July 4, 1989 importation, to which Sandvig pled guilty, and the June 18, 1989 importation, which was deemed relevant conduct and for which he was held accountable. The California presentence report, however, clearly indicates that Sandvig's offense level was calculated entirely on the basis of the three 1988 marijuana shipments underlying his California conviction. Thus the two shipments from which his Texas term of imprisonment resulted were not taken into account at all, let alone "fully taken into account," in determining the offense level in this case. (The presentence report did calculate the sentence Sandvig might have faced had the Texas and California charges been combined and sentence imposed on them at the same time, but that was merely a hypothetical calculation. It was not the basis for determining Sandvig's offense level.)
 
 
 [6]
 Yet another version of § 5G1.3 took effect on November 1, 1995. The sentence for the instant offense may now be imposed to run "concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." All mention of a "reasonable incremental penalty," and of the total punishment that would have been imposed had the offenses been combined, has been deleted. See U.S.S.G.App. C am. 535. The court now need only consider the factors set out in 18 U.S.C. § 3553(a) and be "cognizant of" several other factors. U.S.S.G. § 5G1.3 (n. 3). This version will apply at Sandvig's resentencing, if it is still in effect then
 There is no ex post facto problem. Every version of § 5G1.3 (except the 1991 version, which never applied to Sandvig) has allowed district courts to impose sentences ranging from the totally consecutive to the totally concurrent. The relevant difference has been in the degree of discretion afforded the trial court in making that determination, and this court suggested in Redman that that factor is the key to deciding whether one version is more favorable to a defendant than another version for ex post facto purposes: the more discretion afforded the trial court, the less favorable a given version of the guideline is to defendants. See Redman, 35 F.3d at 440-41 (citing cases). The 1987 version of § 5G1.3, in effect at the time of Sandvig's offenses, afforded total discretion to the trial court. Under the 1995 version, that discretion is subject to some (albeit minimal) constraints. The 1995 version of the guideline is therefore no less favorable to Sandvig than was the 1987 version, and its application would therefore not violate the ex post facto clause. Moreover, because "[t]he Ex Post Facto Clause 'forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred '." Hamilton v. United States, 67 F.3d 761, 765 (9th Cir.1995) (quoting Weaver v. Graham, 450 U.S. 24, 30, 101 S.Ct. 960, 965, 67 L.Ed.2d 17 (1981)) (emphasis added), the relevant comparison for ex post facto purposes is between the 1987 and 1995 versions of the guideline, not between the 1995 version and the various versions in effect at the time of Sandvig's prior sentencings.