64 F.3d 667
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Derrick BINES, Kenneth Ray Johnson, and Arnold Martin,
Defendants-Appellants.
 Nos. 94-50082, 94-50212, 94-50382.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 7, 1995.
Decided Aug. 15, 1995.
 
 Before: Fletcher, Wiggins, and Fernandez, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellants Arnold Martin, Kenneth Ray Johnson, and Derrick Bines appeal their convictions and sentences on drug trafficking charges. We vacate Johnson and Martin's sentences and remand for resentencing in accordance with this disposition. We affirm all of the convictions and the sentence of Bines.
 
 FACTS
 
 3
 In 1990, the FBI began investigating a drug-trafficking organization that it suspected was distributing cocaine, cocaine base, and phencyclidine (PCP) from its base in South Central Los Angeles to street gangs in a number of U.S. cities. On July 16, 1992, the investigation resulted in the indictment of Bines, Johnson and Martin along with co-defendants Grandy, Ruiz, Gutierrez, and Mossette. Bines, Johnson, and Martin were charged as follows.
 
 Bines
 
 4
 The Government indicted Bines on charges of conspiring to distribute cocaine base and cocaine in violation of 21 U.S.C. Sec. 846 (Count I), conspiring to distribute phencyclidine ("PCP") in violation of 21 U.S.C. Sec. 846 (Count II), and distributing and possessing with intent to distribute cocaine base, cocaine, or PCP in violation of 21 U.S.C. Sec. 841(a)(1) (Counts IX-XIV, XVI-XXV). In a superseding indictment, Bines was also charged with laundering monetary instruments in violation of 18 U.S.C. Secs. 1956(a)(1)(A) and 1956(a)(2) (Superseding Count).
 
 
 5
 Bines and the Government entered into a plea bargain agreement that provided that Bines would plead guilty to Counts I and II, and the Superseding Count. The agreement also provided that Bines would cooperate with the Government in return for the Government's recommendation of a one, two, or three-point downward departure, depending on the level of Bines' cooperation. In addition, the agreement stipulated that Bines' base offense level would be adjusted upward by four points for his role and downward three points for his acceptance of responsibility.
 
 
 6
 The district court sentenced Bines to concurrent 240-month prison terms for each of the three counts and a supervised release term of five years. The district court also imposed a fine of $50,000. On appeal, Bines challenges his sentence, claiming that the Government breached the plea agreement by recommending a two-point departure for his cooperation and that the district court erred by departing upward based on his role in the conspiracy.
 
 Johnson
 
 7
 The Government indicted Johnson on one count of conspiring to distribute cocaine base in violation of 21 U.S.C. Sec. 846 (Count I), and four Counts of distributing cocaine base in violation of 21 U.S.C. Sec. 841(a)(1) (Counts III-VI). The Government also filed an information pursuant to 21 U.S.C. Sec. 851 for the purposes of enhancing Johnson's sentence. The information alleged that Johnson had previously been convicted of a felony drug offense in the State of Colorado.
 
 
 8
 Johnson moved to dismiss the indictment alleging, inter alia, that the Government had engaged in selective prosecution of African Americans. The district court denied the motion, and the jury found Johnson guilty on Counts I, III, and IV. The district court sentenced Johnson to concurrent 213 month prison terms for each count to run concurrently with the unexpired term of his Colorado federal sentence to be followed by ten years supervised release.
 
 
 9
 On appeal, Johnson challenges his conviction, claiming that the Government engaged in selective prosecution, 21 U.S.C. Sec. 841(b)(1)(A) is void for vagueness, his sentence constitutes cruel and unusual punishment, his counsel was ineffective, and there was insufficient evidence for his conviction. Johnson also challenges his sentence, claiming that the Government breached a plea agreement in a prior federal case in the District of Colorado. The parties agree that a limited remand is necessary so that the district court can resentence Johnson based on the correct amount of time spent in custody prior to sentencing.
 
 Martin
 
 10
 The Government indicted Martin on charges of conspiring to distribute cocaine base and cocaine in violation of 21 U.S.C. Sec. 846 (Count I), and distributing cocaine base in violation of 21 U.S.C. Sec. 841(a)(1) (Counts III and VI). Martin went to trial and the jury found him guilty on Counts I and III.
 
 
 11
 Martin was sentenced to a 121 month prison term and a supervised release term of ten years. On appeal, Martin challenges his conviction, claiming that the different penalties for crack and powder cocaine violate his right to due process, 21 U.S.C. Sec. 841(b)(1)(A) is void for vagueness, and his counsel was ineffective. Martin also challenges his sentence, arguing that the district court erred by failing to order a downward departure based on his claim of incomplete duress. The Government points out that the district court erroneously relied on a defective state court drug conviction to enhance the sentence and seeks a limited remand so that the supervised release term can be reduced to five years.
 
 JURISDICTION
 
 12
 The district court had jurisdiction under 18 U.S.C. Sec. 3231. This court has jurisdiction under 28 U.S.C. Sec. 1291 and 18 U.S.C. Sec. 3742.
 
 DISCUSSION
 I. VOID FOR VAGUENESS
 
 13
 Both Johnson and Martin argue that 21 U.S.C. Sec. 841(b)(1)(A) is unconstitutionally vague because "cocaine base" and "cocaine," as defined in the statute, are essentially the same drug.[1] "We review de novo a challenge that a statute is unconstitutionally vague," United States v. Van Hawkins, 899 F.2d 852, 853 (9th Cir. 1990) (citing United States v. Stansell, 847 F.2d 609, 612 (9th Cir. 1988)), and affirm.
 
 
 14
 "In evaluating a question of vagueness, the court must look to the common understanding of the terms of a statute." United States v. Fitzgerald, 882 F.2d 397, 398 (9th Cir. 1989) (citing Broadrick v. Oklahoma, 413 U.S. 601, 608 (1973)). A defendant is deemed to have fair notice of an offense if a reasonable person of ordinary intelligence would understand that his or her conduct is prohibited by the law in question." Id. (citing United States v. Hogue, 752 F.2d 1503, 1504 (9th Cir. 1985)). In addition, "the statute must 'establish minimal guidelines to govern law enforcement."' Van Hawkins, 899 F.2d at 854 (quoting Kolender v. Lawson, 461 U.S. 352, 358 (1983)).
 
 
 15
 This court has held on a number of occasions that "cocaine base" in Sec. 841 is not unconstitutionally vague. See United States v. Davis, 36 F.3d 1424, 1434 (9th Cir. 1994); United States v. Shaw, 936 F.2d 412, 416 (9th Cir. 1991); Van Hawkins, 899 F.2d at 854; accord United States v. Brown, 859 F.2d 974 (D.C. Cir. 1988) (finding that when cocaine base is involved the more specific provision dealing with cocaine base would apply). The defendants' attempts to distinguish these cases are unavailing.
 
 
 16
 The defendants rely first on expert testimony at trial that "cocaine base," in the nomenclature of chemistry, is "'cocaine' without any distinction." RT 3/22/94 at 9-10. The defendants conclude that because the statute uses the interchangeable words -- "cocaine" and "cocaine base" -- to distinguish between powder and crack cocaine, it is impermissibly vague. Johnson also argues that the use of "cocaine base" to mean cocaine that contains a hydroxylion, is vague because the expert testified that there is no such thing as a "hydroxylion." The defendants' arguments fail because in Shaw, we canvassed the legislative history of section 841 and found no statements by Congress "indicating that 'cocaine base' refers to cocaine that is a 'base' for chemistry purposes." Shaw, 936 F.2d at 416; see also Fitzgerald, 882 F.2d at 398 (requiring interpretation to be in accord with common understanding of words). In addition, we rejected a definition of cocaine base under section 841 as cocaine that contains a hydroxylion. Shaw, 936 F.2d at 415. Instead, the court concluded Congress intended "cocaine base" to include "crack" and "rock cocaine" which are cocaine forms that can be smoked. "Cocaine" and "cocaine base" are objectively distinguishable according to the court by their different functions and the effects of the substances. Id. We are bound by Shaw.
 
 
 17
 The defendants next argue that cocaine base and cocaine cannot be defined objectively because they perform identical functions. For example, they point to testimony that it is possible to smoke powder cocaine by combining it in a cigarette with baking soda and a drop of water, and cocaine base could be easily converted to powder cocaine by subjecting it to ether. However, the defendants' facial attack on the statute cannot succeed. Because no First Amendment interest is implicated by their claim, the defendants cannot rely on the possibility that the statute may be vague with respect to exotic uses of cocaine; instead, they must establish that section 841 is vague as applied in their case, and this they have failed to do. See Van Hawkins, 899 F.2d at 854 (citing United States v. Mazurie, 419 U.S. 544, 550 (1975)); Davis, 36 F.3d at 1434 (citing Maynard v. Cartwright, 486 U.S. 356, 361 (1988)).
 
 
 18
 The defendants' claim that section 841, which punishes possession of cocaine base much more harshly than possession of cocaine, provides no guidance to prosecutors is likewise without merit. Because the statute adequately distinguishes "cocaine base" from "cocaine," it does not permit prosecutors and law enforcement to act with unfettered discretion. See Van Hawkins, 899 F.2d at 854.
 
 
 19
 Finally, Martin claims that the evidence in his case did not prove that the substance was in fact cocaine base and that consequently the district court was unable to determine whether to apply section 841(b)(1)(A)'s more severe penalty for crack. This claim is without merit. The term cocaine base encompasses crack and rock cocaine. Shaw, 936 F.2d at 415. Martin, himself, stipulated that the substance purchased on July 12, 1990 was rock cocaine, and a DEA chemist confirmed this fact.
 
 
 20
 The defendants' void for vagueness challenge to section 841 therefore fails.
 
 II. DUE PROCESS
 
 21
 Martin argues that the 100 to 1 ratio between cocaine hydrochloride and cocaine base in Sec. 841(b)(1)(A) violates his right to due process because both substances are essentially the same drug posing the same harm to society. We review de novo whether a statute violates a defendant's right to due process, see United States v. Savinovich, 845 F.2d 834, 838-39 (9th Cir.), cert. denied, 488 U.S. 943 (1988), and conclude that the defendant's claim lacks merit.
 
 
 22
 A person convicted of a crime "is eligible for ... whatever punishment is authorized by statute for his offense ... so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment." Chapman v. United States, 500 U.S. 453, 465 (1991). "In this context ... an argument based on equal protection essentially duplicates an argument based on due process. Id. (citing Jones v. United States, 463 U.S. 354, 362 n.10 (1983)).
 
 
 23
 This court has held on several occasions that the different penalties for crack and cocaine in Sec. 841(b)(1) have a rational basis. See United States v. Harding, 971 F.2d 410, 412-14 (9th Cir. 1992) ("Congress's decision to punish the sale of crack more severely than the sale of powder cocaine was based on a broad and legitimate basis."), cert. denied, 113 S. Ct. 1025 (1993); United States v. Van Winrow, 951 F. 2d 1069, 1071 (9th Cir. 1991) (finding that 100:1 ratio of crack to powder cocaine is a rational distinction); United States v. Malone, 886 F.2d 1162, 1166 (9th Cir. 1989) (finding that Congress' "market-oriented approach" to sentencing for crack and cocaine is constitutional). Congress has a reasoned explanation for the differing penalties.
 
 
 24
 Congress's decision to punish the sale of crack more severely than the sale of powder cocaine was based on a broad and legitimate basis. Although crack and powder cocaine are different forms of the same drug, the routes of administration, their physiological and psychological effects, and the manner in which they are sold set the two forms of the drug apart. Crack is normally smoked in a glass pipe, while powder cocaine is most often ingested nasally. Because it is smoked, crack has a quicker and more intense effect on the brain than powder cocaine ingested nasally, causing a greater desire for more. Crack is also sold in smaller quantities and lower unit prices than powder cocaine, thereby reducing the financial barrier which had previously limited cocaine usage.
 
 
 25
 * * *
 
 
 26
 * * *
 
 
 27
 Crack presents a much larger problem than powder cocaine, both in the number of users and the drug's effects on the individual.
 
 
 28
 Harding, 971 F.2d at 413. Because Congress had a rational basis for its action, no violation of due process has occurred.
 
 
 29
 Martin makes no attempt to distinguish these cases. Instead, he argues that because the Sentencing Guidelines Commission has informed Congress that the 100 to 1 ratio is too great that this court should find the statute to be without rational basis. See U.S. Sentencing Commission: Executive Summary of Special Report on Cocaine and Federal Sentencing Policy, 56 Crim. L. Rep. (BNA) 2159 (Mar. 1, 1995). However, this panel is not free to disregard our own precedents on the mere chance that Congress may at some future time amend the mandatory minimum penalties for crack and powder cocaine under 21 U.S.C. Sec. 841. The statute and the case law are binding.
 
 
 30
 Martin also argues that his due process rights were violated because the normally careful, deliberative practices of Congress were not followed when passing section 841. Instead, according to Martin, Congress engaged in incomplete fact-finding and passed the bill in a legislative frenzy. On this basis, Martin urges this court to find the statute unconstitutional. We decline Martin's invitation to second-guess Congress where it has a rational basis for its statute. In the words of Chief Justice Waite, "For protection against abuses by legislatures the people must resort to the polls, not to the courts." Munn v. Illinois, 94 U.S. 113, 134 (1877).
 
 
 31
 Because this circuit has determined on several occasions that the differing penalties for crack and powder cocaine have a rational basis, we hold that Sec. 841 does not violate Martin's due process rights.
 
 III. CRUEL AND UNUSUAL PUNISHMENT
 
 32
 Johnson claims that because of his drug addiction,[2] his 240-month sentence under 21 U.S.C. Secs. 846 and 841 constitutes cruel and unusual punishment. Whether a defendant's sentence constitutes cruel and unusual punishment is reviewed de novo. United States v. Bland, 961 F.2d 123, 128 (9th Cir.), cert. denied, 113 S. Ct. 170 (1992). This claim lacks merit.
 
 
 33
 A conviction based solely on the basis of narcotics addiction, and not for culpable behavior such as possession or sale, violates the Eighth Amendment's prohibition against cruel and unusual punishment. Robinson v. California, 370 U.S. 660, 664-68 (1962).
 
 
 34
 The Supreme Court has held that a mandatory sentence of life without parole is not so disproportionate to the crime of a first-time offense of drug possession that it constitutes cruel and unusual punishment. Harmelin v. Michigan, 501 U.S. 957 (1991). In United States v. Van Winrow, we held that life imprisonment without parole pursuant to 21 U.S.C. Sec. 841(b)(1)(A) did not constitute cruel and unusual punishment for a conviction for possessing with intent to distribute 151.9 grams of cocaine base after three state felony cocaine possession convictions. 951 F.2d 1069, 1070-71 (9th Cir. 1991). Here Johnson received a 20-year sentence for possession with intent to distribute 544.6 grams of cocaine base. Because Johnson received a more lenient sentence for dealing more than three times the amount of cocaine than Van Winrow, we conclude that Johnson's sentence is not so disproportionate that it constitutes cruel and unusual punishment.
 
 
 35
 Nor is Johnson's sentence cruel and unusual because of his alleged drug addiction. Johnson's punishment is not for being an addict; his punishment is for possessing narcotics with intent to sell them. The Supreme Court has held that such punishment is not cruel and unusual. Robinson, 370 U.S. at 664-68; see also United States v. Klein, 860 F.2d 1489, 1497 n.12 (9th Cir. 1988) ("Possession with intent to distribute a large quantity of cocaine is, unlike the simple state of addiction, a culpable act.").
 
 
 36
 We hold that Johnson's sentence does not constitute cruel and unusual punishment.
 
 IV. SELECTIVE PROSECUTION
 
 37
 Johnson claims that the district court erred by finding that he had failed to present a prima facie showing that the government selectively prosecuted him based on his race. A district court's denial of a motion to dismiss for selective prosecution, based on a defendant's failure to present a prima facie showing of selective prosecution, is reviewed for clear error. United States v. Davis, 36 F.3d 1424, 1432 (9th Cir. 1994), cert. denied sub nom. Williams v. United States, 115 S. Ct. 1147 (1995). We hold that the district court did not clearly err by denying discovery for Johnson's selective prosecution motion.
 
 
 38
 Before trial, Johnson moved to dismiss the indictment, asserting that he had been selectively prosecuted. The district court denied the motion without an evidentiary hearing because Johnson did not adduce any evidence in support of his claim.[3]
 
 
 39
 At the time that the defendant made his selective prosecution claim, he was required to meet a "high threshold" to justify discovery. United States v. Bourgeois, 964 F.2d 935, 939 (9th Cir. 1992). Under Bourgeois, the defendant,
 
 
 40
 must present specific facts, not mere allegations, which establish a colorable basis for the existence of both discriminatory application of a law and discriminatory intent on the part of government actors.
 
 
 41
 Id. However, in United States v. Armstrong, which was decided while this case was pending on appeal, we modified the Bourgeois standard and held that discovery "may be ordered when the evidence provides a colorable basis for believing that discriminatory prosecutorial selections have occurred." 48 F.3d 1508, 1512 (9th Cir. 1995) (en banc).
 
 
 42
 Regardless of whether the more lenient standard of Armstrong or the "high threshold" of Bourgeosie is applied, we cannot say that the district court clearly erred because the defendant adduced essentially no evidence in support of his claim. We affirm the district court's denial of discovery in support of defendant's selective prosecution claim.
 
 V. SUFFICIENCY OF THE EVIDENCE
 
 43
 Johnson claims that the Government failed to prove beyond a reasonable doubt that cocaine base was involved in his offenses. We disagree.
 
 
 44
 We must determine whether, "'viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."' United States v. Shortt Accountancy Corp., 785 F.2d 1448, 1453 (9th Cir.), cert. denied, 478 U.S. 1007 (1986) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)) (emphasis in original). Where a defendant fails to move for a judgment of acquittal at trial, this court reviews the sufficiency of the evidence only for plain error to avoid a miscarriage of justice. United States v. Chu, 5 F.3d 1244, 1248 (9th Cir. 1993), cert. denied, 114 S. Ct. 1549 (1994). Because Johnson did not move for judgment of acquittal at trial, the plain error standard of review applies.
 
 
 45
 Under this standard of review, the evidence was more than sufficient to support Johnson's convictions for trafficking in cocaine base. A government informant testified that his transactions with Johnson were for rock cocaine. An undercover agent testified that Johnson sold him rock cocaine. The DEA chemist who tested the drugs Johnson sold identified the substance as cocaine base.[4] Finally, Johnson admitted at trial that he sold "rock" cocaine to the informant and the undercover agent. We conclude that this evidence was sufficient for a fact-finder to conclude beyond a reasonable doubt that Johnson trafficked in cocaine base and not some other form of cocaine.
 
 VI. BREACH OF PLEA AGREEMENT
 
 46
 Johnson argues that the Government breached a plea agreement in a 1991 Colorado federal case by including a prior state drug conviction for enhancement purposes under 28 U.S.C. Sec. 851 in the indictment in this case. The district court determined that the plea agreement did not prohibit the Government from using the prior state conviction for enhancement, and we agree with its conclusion.
 
 
 47
 The district court's construction of a plea agreement is reviewed for clear error. United States v. Conkins, 9 F.3d 1377, 1381 (9th Cir. 1993); see also United States v. Fernandez, 960 F.2d 771, 772 (9th Cir. 1991); United States v. Keller, 902 F.2d 1391, 1393 (9th Cir. 1990); United States v. Krasn, 614 F.2d 1229, 1233 (9th Cir. 1980). The determination of whether the government violated the terms of a plea agreement is reviewed de novo. United States v. Myers, 32 F.3d 411, 413 (9th Cir. 1994); United States v. Fisch, 863 F.2d 690, 690 (9th Cir. 1988).
 
 
 48
 "Plea agreements are contractual in nature and are measured by contract law standards." United States v. Read, 778 F.2d 1437, 1441 (9th Cir. 1985), cert. denied, 479 U.S. 835 (1986). "To determine whether a sentence complies with the terms of a plea agreement, we look to what was reasonably understood by the defendant when he entered his plea." Fernandez, 960 F.2d at 772 (citations omitted). Any dispute over the terms of the agreement must be resolved by objectively viewing the disputed terms. United States v. Goroza, 941 F.2d 905, 909 (9th Cir. 1991).
 
 
 49
 The Colorado plea agreement required Johnson to plead guilty to one count of possession of cocaine base with intent to distribute in exchange for the Government's dismissal of two similar counts. The Government did not use Johnson's prior state drug conviction to enhance the sentence for the Colorado federal drug charges. The plea agreement does not address whether it has a preclusive effect on the use of Johnson's prior state drug conviction in a later proceeding. In fact, it is silent on the issue of the possibility of any subsequent proceedings. However, a declaration submitted by Johnson's Colorado attorney states that Johnson was concerned that the state conviction could be used to double his mandatory minimum sentence under 21 U.S.C. Sec. 841(b) in the Colorado federal case. Declaration of Warren R. Williamson, at 4. There is no assertion that the parties ever discussed the possibility that federal drug charges would be later filed against Johnson in California.
 
 
 50
 In this case, the Government indicted Johnson on one count of conspiracy to distribute cocaine base ("Count I") and two counts of distribution of cocaine base ("Counts III and IV"). In Count I the Government alleged as one of twenty-four overt acts the possession of cocaine base in Colorado for which Johnson was convicted pursuant to his Colorado plea agreement. The conduct underlying Counts III and IV, drug transactions that occurred in California, are wholly unrelated to those in Colorado. The Government did rely on Johnson's prior state drug conviction as an enhancing factor pursuant to 21 U.S.C. Sec. 851.
 
 
 51
 The district court construed the plea agreement and concluded:
 
 
 52
 [T]he government, in this case, did not breach the plea agreement that defendant entered in to in his Denver federal case. That agreement did not prohibit the government from alleging defendant's 1988 Denver, Colorado state conviction in No. 88-(C.R.-055) pursuant to 21 U.S.C. Sec. 851 as an enhancing prior conviction in this case, which involves separate crimes that defendant committed in this district in 1989-90. The government did not, by entering into the plea agreement in defendant's Denver federal case, waive its right to allege defendant's 1988 state conviction as an enhancing prior conviction in this case.
 
 
 53
 Court's Sentencing Findings With Respect to Defendant Kenneth Ray Johnson, at 3.
 
 
 54
 The district court did not clearly err in construing the agreement. As to the Government's use of the Colorado state conviction to enhance the California convictions at issue here, the defendant could not reasonably believe that enhancement in California was precluded by the agreement; his own attorney does not claim that the possibility of California charges were discussed during negotiations, much less addressed in the agreement. In addition, the plea agreement does not preclude the Government from indicting Johnson on Count I. As a matter of law, the Government is not collaterally estopped from prosecution of a conspiracy even when the substantive charges have been dismissed in another district pursuant to a plea agreement. United States v. Conkins, 9 F.3d 1377, 1381-82 (9th Cir. 1993).
 
 VII. INEFFECTIVE ASSISTANCE OF COUNSEL
 
 55
 Both Johnson and Martin contend that their trial attorneys provided ineffective assistance of counsel. We decline to reach the merits of these claims and leave them to be resolved on collateral attack. See Davis, 36 F.3d at 1433 (noting that claims of ineffective assistance of counsel are normally addressed in habeas proceedings).
 
 VIII. SENTENCING ISSUES
 A. Cooperation
 
 56
 Bines argues that the Government breached the plea agreement by moving under U.S.S.G. Sec. 5K1.1 for a downward departure of less than three levels. Because the district court awarded Bines a three-point departure for his cooperation, mooting the defendant's request for specific performance of the agreement, we affirm.
 
 
 57
 "Whether a plea agreement has been violated is a question of fact for district court and is reviewed for clear error." United States v. Roberts, 5 F.3d 365, 370 (9th Cir. 1993) (citing United States v. Sutton, 794 F.2d 1415, 1423 (9th Cir. 1986)). "To determine whether a plea agreement was violated we look to 'what the parties ... reasonably understood to be the terms of the agreement." United States v. Torres, 999 F.2d 376, 378 (9th Cir. 1993) (quoting Sutton, 794 F.2d at 1423). "[A]ny dispute over the terms of the agreement will be determined by objective standards." United States v. Goroza, 941 F.2d 905, 909 (9th Cir. 1991) (citing Read, 778 F.2d at 1441).
 
 
 58
 Bines' plea agreement establishes the terms upon which the Government's obligation to seek a downward departure depends:
 
 
 59
 If you comply completely with this agreement, and cooperate completely and fully as directed by this Office, at the time of sentencing, this Office will:
 
 
 60
 * * *
 
 
 61
 * * *
 
 
 62
 4. Fully notify the sentencing court of the extent of your cooperation. If, within the exclusive discretion of the government, you cooperation constitutes "substantial assistance in the investigation or prosecution of another person" within the meaning of Section 5K1.1 of the Sentencing Guidelines, the government will move the sentencing court to reduce your offense level by either one, two or three levels from the otherwise applicable adjusted offense level, which the parties would, in the absence of cooperation, be level 41. Thus, your completely honest and truthful cooperation would result in the government's discretion to recommend that the court find your adjusted offense level to be either 38, 39 or 40, resulting in a recommended sentencing range of 235-293 months, 262-237 months or 292-365 months, respectively, depending on the government's discretionary decision whether to recommend a reduction of one, two or three levels.
 
 
 63
 * * *
 
 
 64
 * * *
 
 
 65
 It will be up to the court to determine the appropriate sentence for you under all the relevant circumstances.
 
 
 66
 Guideline Sec. 5K1.1 provides that "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." U.S.S.G. Sec. 5K1.1.
 
 
 67
 Pursuant to the cooperation agreement, Bines and his attorney met with the Government's attorneys who questioned Bines about the involvement of his suspected co-conspirators. The prosecutors concluded that Bines was lying to protect his girlfriend Debra Hall and his friend Kenneth Crumby. AUSA Gordon wrote a letter to Bines' attorney expressing dissatisfaction with the truthfulness of Bines' cooperation and stating that the Government was "not interested in talking any further with Mr. Bines." In response, Bines' attorney informed the Government that Bines wished to withdraw his plea. Bines did not, however, do so. Instead, Bines said that he would be willing to inform against a jail guard who had offered to smuggle drugs into the jail for him. Based on the information provided by Bines, the Government investigated and successfully prosecuted the jail guard.
 
 
 68
 Taking into account all of the circumstances of Bines' cooperation -- some of which it believed was truthful and some not -- the Government recommended a two-point downward departure for his cooperation. Bines argued that under the plea agreement, he was entitled to a three-point downward departure for cooperation. The district court declined to construe the agreement, choosing instead to exercise its discretion to exceed the Government's recommendation by granting a three-point departure for the defendant's cooperation. See United States v. Udo, 963 F.2d 1318, 1319 (9th Cir. 1992) (allowing district court to exceed Government's recommendation for cooperation departure).
 
 
 69
 Bines first argues that the Government breached the plea agreement by failing to recommend a three point adjustment under U.S.S.G. Sec. 3E1.1 for acceptance of responsibility. Bines appears to have confused the Government's promise to recommend a three-point adjustment for acceptance of responsibility with its discretion to recommend a departure of one, two, or three points for cooperating. The Government met its obligation under the plea agreement by recommending a three-point adjustment for Bines' acceptance of his own responsibility under U.S.S.G. Sec. 3E1.1.
 
 
 70
 The only remaining issue is whether the defendant is entitled to specific performance under the agreement for his cooperation. Because the district court did not construe the agreement, choosing instead to exercise its own discretion to order a three-point departure, we cannot affirm based on a factual finding that the Government had discretion under the plea agreement to recommend a two-point departure. See Roberts, 5 F.3d at 370 (whether plea agreement is violated is question of fact for district court). Nonetheless, we affirm on the basis that the specific performance sought by the defendant is a moot issue -- the district court already ordered a three-point departure for cooperation.
 
 B. Organizer or Leader Adjustment
 
 71
 Bines argues that the district court erred by finding the he was a leader or organizer under U.S.S.G. Sec. 3B1.1(a) and by failing to make specific factual findings in support of its upward adjustment. These claims are without merit.
 
 
 72
 Under the terms of the plea agreement, Bines has waived his right to appeal his sentence. The agreement states:
 
 
 73
 You expressly waive your right to appeal or collaterally attack your conviction or sentence on any ground other than a claim that the court has imposed an illegal sentence. You agree that in the event you provide completely honest and truthful cooperation, a sentence falling anywhere within the range of offense levels 38-40 / criminal history category I (235-365 months) would not be an illegal sentence.
 
 
 74
 Bines received a sentence of 240 months, which is in the range of a legal sentence as defined by the agreement. In addition, Bines received a three-point downward departure, reflecting the district court's determination that he had fully cooperated. Finally, although an agreement is invalid if not knowingly and voluntarily made, see United States v. DeSantiago-Martinez, 980 F.2d 582, 582 (9th Cir. 1992), Bines has not presented any evidence in support of such a determination. Nothing rebuts the defendant's acknowledgment that he had read the agreement, understood it, and voluntarily agreed to it. Accordingly, under the terms of the plea bargain agreement, Bines has waived his right to appeal his sentence.
 
 C. Incomplete Duress
 
 75
 Martin argues that the district court erred by failing to depart downward under Guidelines Section 5K2.12 based on his claim of incomplete duress.[5] This claim is without merit.
 
 
 76
 "[A] district court's discretionary decision not to depart downward from the guidelines is not subject to review on appeal." United States v. Morales, 898 F.2d 99, 103 (9th Cir. 1990). However, the court may review a failure to exercise discretion to depart downward if the district court's decision not to depart was based on an erroneous conclusion that it lacked authority under the Guidelines to do so. See United States v. Belden, 957 F.2d 671, 676 (9th Cir.), cert. denied, 113 S. Ct. 234 (1992). However, "[t]his court has no jurisdiction to review a sentencing court's refusal to depart downward as long as the court in fact exercised its discretion." United States v. Robinson, 958 F.2d 268, 272 (9th Cir. 1992).
 
 
 77
 The record indicates that the district court carefully considered Martin's duress claim but exercised its discretion not to depart because it was not satisfied that Martin acted from fear for his own safety. After considerable argument on the issue of duress, the court observed: "[W]hether or not he was concerned with his own safety is a question upon which this court is not as yet satisfied." RT 7/11/94 at 21. The court then declined defense counsel's "eloquent invitation to depart." Id. at 23.
 
 
 78
 We hold that we lack jurisdiction over the departure requested for duress because the district court in fact exercised its discretion not to depart for that reason.
 
 D. Recalculation of Sentences
 1. Johnsons's Sentence
 
 79
 Both parties agree that a remand is necessary for the district court to correct Johnson's sentence. At the time of sentencing, Johnson had spent 34 months in custody on his Colorado federal sentence. However, the district court's calculation of his sentence presumed that he had spent only 27 months in custody. Hence, the district court imposed concurrent sentences of 213 months (240 - 27 = 213). The parties agree that the correct sentence should have been 206 months (240 - 34 = 206). Consequently, Johnson's case will be remanded for the purpose of recalculating Johnson's sentence. See United States v. Pimentel, 34 F.3d 799, 800 (9th Cir. 1994), cert. denied, 115 S. Ct. 777 (1995).
 
 2. Martin's Sentence
 
 80
 The Government, on its own initiative,[6] asserts that the case should be remanded for the purpose of allowing the district court to reduce Martin's supervised release term from ten to five years. We agree.
 
 
 81
 Initially, the district court sentenced Martin to 121 months in prison to be followed by a supervised release term of five years. However, the district court later increased the supervised release term to ten years because it believed that to be the statutory minimum. The district court believed that Martin's prior state drug conviction, which the Government had alleged as an enhancing prior conviction under 21 U.S.C. Sec. 841(b)(1)(A), required the supervised release term to be doubled. The Government dismissed the enhancement information because the state plea proceeding was defective. This reduced Martin's minimum mandatory sentence under Sec. 841(b)(1)(A) from twenty to ten years. Likewise, the supervised release term should have been reduced from ten to five years. However, the district court failed to do so.
 
 
 82
 Consequently, we vacate and remand Martin's sentence for the limited purpose of allowing the district court to reduce Martin's supervised release term from ten to five years. See United States v. Guzman-Bruno, 27 F.3d 420, 422-23 (9th Cir.), (remanding for limited purpose of reducing term of supervised release), cert. denied, 115 S. Ct. 451 (1994).
 
 CONCLUSION
 
 83
 The sentences of Johnson and Martin are vacated and remanded. On resentencing, the district court shall resentence, limiting the resentencing to recalculation as set forth in Part VIII.D. of this disposition, and not otherwise. The convictions of all defendants and the sentence of Bines are affirmed.
 
 
 84
 AFFIRMED in part; VACATED and REMANDED in part.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 Section 841(b) provides for a mandatory minimum ten-year sentence for a violation of Sec. 841(a)(1) involving "5 kilograms of more of a mixture or substance containing a detectable amount of ... cocaine, its salts, optical and geometric isomers, and salts of isomers," 21 U.S.C. Sec. 841(b)(1)(A)(ii)(II) (emphasis added), or "50 grams or more of a mixture or substance described in clause (ii) which contains cocaine base," 21 U.S.C. Sec. 841(b)(1)(A)(iii) (emphasis added)
 
 
 [2]
 Johnson also raises the issue of his minor role in the offense in support of his cruel and unusual punishment claim. However, he fails to support it with any argument or evidence. Consequently, he has waived this claim. See Acosta-Huerta v. Estelle, 7 F.3d 139, 144 (9th Cir. 1993) (issues raised in brief but not supported by argument are deemed abandoned)
 
 
 [3]
 On appeal, Johnson invites this court to take judicial notice of two recent studies concerning race-based prosecutions in the Central District of California. The conclusions of these studies are inappropriate for judicial notice because they contain disputed facts. Fed. R. Evid. 201
 
 
 [4]
 Johnson asserts that the DEA chemist could not conclusively establish that cocaine base was involved because he did not testify that the substance contained a hydroxylion. However, in Shaw, we held that section 841 does not define cocaine base as cocaine that contains a hydroxylion. 936 F.2d at 415
 
 
 [5]
 Section 5K2.12 provides in pertinent part:
 If the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amount to a complete defense, the court may decrease the sentence below the applicable range....
 
 
 [6]
 We appreciate the Government's bringing this error to the attention of the court