UNITED STATES of America,
Plaintiff–Appellee,

v.

Jose Maria GALVEZ–VILLAREAL,
Defendant–Appellant.

No. 92–50242.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 4, 1992.

Decided Aug. 24, 1993.

Celia M. Rumann, Federal Defenders of San Diego, Inc., San Diego, CA, for defendant-appellant.

Barbara L. Major, Asst. U.S. Atty., San Diego, CA, for plaintiff-appellee.

Before: NELSON, HALL and RYMER, Circuit Judges.

PER CURIAM:

Galvez–Villareal pled guilty to two counts of transporting undocumented aliens in violation of 8 U.S.C. § 1324(a)(1)(B). On appeal, he claims that the district court sentenced him erroneously under the Sentencing Guidelines by both failing to adjust downward because the offense was not committed for profit and improperly departing upward. We affirm the district court on both issues.

## I. FACTS

Galvez–Villareal, a citizen of the United States of Mexico, was arrested by Border Patrol agents in San Diego after a five- to seven-minute high-speed chase which traversed interstate freeways and streets in a residential neighborhood and an industrial park area. Although a drug test was not executed, the arresting officer testified that the appellant had fresh track marks on one arm, indicating recent heroin use. There were nine passengers, all of whom were Mexican nationals, in the car—seven in the passenger compartment and two in the trunk.

Seven of the passengers were deported immediately, and two were retained as material witnesses. Both passengers testified that they did not know the defendant previously and that he had picked them up on the U.S. side of the border. The sum to have been paid to Galvez for transporting one of his passengers to Los Angeles is contested by the parties, but it appears that he was to have been paid at least $30 and perhaps as much as $300. Galvez–Villareal contends that the $30 he received was to be used to buy gas for the trip.

The district court sentenced Galvez–Villareal to 24 months imprisonment and three years of supervised release, which amounted to a six-level upward departure under the Guidelines. The court gave the following explanation for the enhancement:

> Now, the departure from nine to 15 is an increase of six levels, which—and, for which the Court is taking into consideration the large number of people in the car, the high speed through residential areas, the endangerment of the public, the endangerment of the Border Patrol, the endangerment of residents who live in the area through which the vehicle was travelling, and the circumstances under the totality of them ...

Later in the sentencing hearing, the district court added that the defendant "was also under the influence of narcotics at the time of the accident [sic]; that's another circumstance that the court takes into consideration ...."

## II. THE "FOR PROFIT" CLAIM

Galvez–Villareal claims that the district court should have adjusted his sentence downward by three offense levels because he did not commit it "for profit." U.S.S.G. § 2L1.1(b)(1). He first argues that the district court failed to comply with Fed. R.Crim.P. 32(c)(3)(D) by not making appropriate findings of fact as to whether the offense was committed for profit. The appellant is correct that the district court did not decide whether he was actually paid $30 or $300 for driving his passengers, but this is immaterial because the district court decided the specific amount was irrelevant, that either amount was sufficient to establish commission of the crime for profit.

Galvez also argues that the district court erroneously concluded that commission of this crime for gas money alone does not meet the not-for-profit standard under § 2L1.1(b)(1). In fact, the district court never made a finding that the transaction was for gas money alone; thus, it could not have made the legal conclusion that such a situation would not meet the adjustment in § 2L1.1(b)(3). The district court's finding that the payment was not for gas is not

clearly erroneous, and so this court shall not disturb it.

### III. THE SENTENCING DEPARTURE CLAIM

■ This court reviews a district court's upward departure under the three-part inquiry of *United States v. Lira–Barraza*, 941 F.2d 745, 746–47 (9th Cir.1991) (en banc): (1) did the district court have legal authority to depart because it identified "an aggravating circumstance of a kind or to a degree the Commission did not adequately take into account;" (2) were there factual findings to support the circumstances for departure; and, (3) was the extent of the departure unreasonable? "To facilitate appellate review the district court's statement should include a reasoned explanation of the extent of the departure founded on the structure, standards and policies of the Act and the Guidelines." *Id.* at 751.

■ In the case at bar, the district court gave several reasons for its departure from the applicable sentencing range—the large number of aliens in the car,[1] the defendant's driving under the influence of heroin, and others related to the circumstances of this particularly dangerous chase (that it occurred in a residential area, that it endangered residents, the general public, and Border Patrol agents). Although the district court did not specify the precise means by which it reached a six-level upward departure, it stated numerous reasons—related to the structure, standards and policies of the Guidelines—which together justify the extent of the upward departure in this case. Thus, the district court's explanation meets the reasonableness test of *Lira–Barraza*.

**AFFIRMED.**

---

1. Section 2L1.1, Application Note 8 expressly states that the Commission did not consider offenses involving large numbers of aliens and, thus, that this is an appropriate basis for upward departure. As amended in November, 1992, however, the Guidelines take account of the number of aliens involved in the crime, and increase the offense level by two for crimes involving between six and 24 aliens. § 2L1.1(b)(2)(A).