UNITED STATES of America, Plaintiff–Appellee,

v.

David Kevin COX, Defendant–Appellant.

No. 92–50476.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 14, 1993.

Decided Nov. 1, 1993.

George A. Winkel, El Cajon, CA, for defendant-appellant.

Roger W. Haines, Jr., Asst. U.S. Atty., San Diego, CA, for plaintiff-appellee.

Before: WOOD, Jr.,* REINHARDT and RYMER, Circuit Judges.

* The Honorable Harlington Wood, Jr., United States Senior Circuit Judge for the Seventh Circuit, sitting by designation.

HARLINGTON WOOD, Jr., Circuit Judge:

David Kevin Cox appeals the sentence imposed by the district court after a jury convicted him of possessing and manufacturing two destructive devices in violation of 18 U.S.C. § 2, 26 U.S.C. § 5822 (must obtain approval from Secretary of Treasury and pay tax to manufacture firearms), 5861(d) (possession) & (f) (manufacture), & 5871. Cox appeals the court's seven-level upward departure; the denial of two points for acceptance of responsibility; the addition of two points for obstruction of justice; and the order that Cox's federal sentence run consecutively with a state sentence he is now serving. We find the court's reliance on U.S.S.G. § 2B1.1(b)(1), a guideline table that raises offense levels based upon the amount of property damage or destruction done, was an unreasonable basis under the circumstances for the upward departure.

## I.

On September 15, 1990, shortly after midnight, a bomb exploded in front of the main doors to the United States courthouse in San Diego, California. Remnants of the bomb included a freon canister, metal welding rods, a pyrotechnic fuse, and a mixture of homemade gunpowder. On February 15, 1991, a police officer found a canister type bomb in Cox's garage, as well as a large quantity of fuses, welding rods, and gunpowder. The bomb contained the same distinctive type of homemade gunpowder found in the remnants of the courthouse bomb. Cox's wife consented to the garage search because Cox was in state custody for stabbing a neighbor's dog and assaulting a cable television repairman with an explosive device.

On August 23, 1991, a grand jury returned a five-count indictment charging Cox with possessing, manufacturing, and using destructive devices in violation of federal laws. The first count charged Cox with detonating a bomb at the entrance to the federal courthouse in San Diego on September 15, 1990.

The four other counts charged Cox with possessing and manufacturing a bomb on September 15, 1990, and possessing and manufacturing a second bomb on February 15, 1991.

In statements to federal agents, Cox admitted to making the gunpowder used in the courthouse bomb, and that he may have made that particular bomb. At trial, Cox testified that he made the bomb found in his garage on February 15, 1991, as well as many "large firecrackers," but denied any connection with the courthouse incident. The jury convicted Cox of possessing and manufacturing the two bombs but acquitted him of bombing the courthouse.

At sentencing, the court calculated Cox's offense level under U.S.S.G. § 2K2.2 and added two points for a multiple count adjustment under U.S.S.G. § 3D1.4.[1] The court then added two points for obstruction of justice under U.S.S.G. § 3C1.1. The court denied Cox's request for a two-point deduction for acceptance of responsibility under U.S.S.G. § 3E1.1. The final offense level was twenty-two. Cox had a criminal history category of II based upon the state convictions for attacking the dog and cable television repairman. The applicable guideline range was forty-six to fifty-seven months. The court, however, chose to depart from the guidelines and added seven offense levels. Thus with an offense level of twenty-nine, the guideline range was 97–121 months. The court sentenced Cox to 120 months on the three counts plus an additional consecutive one-month sentence for the fourth count.

The court calculated its departure according to the loss table in U.S.S.G. § 2B1.1(b)(1). Evidence showed the bomb caused $43,000 worth of damage to the courthouse. The court, however, reduced this figure to $21,000, the amount actually spent on repairs taking into account the pre-existing need to remodel. According to the loss table, damage valued at more than $20,000 warrants an additional six offense levels, but $40,000 warrants seven. The court used the

---

1. The court used section 2K2.2 from the 1990 Guidelines rather than the 1991 Guidelines which were in effect at the time of sentencing in order to avoid an ex post facto problem. The 1991 Guidelines assigned a higher offense level than the Guidelines in effect at the time Cox committed the crimes.

$21,000 figure and added an additional seventh offense level for Cox's endangerment of public welfare and his prior conduct with regard to explosive devices.

## II. ANALYSIS

### A. *Sentencing Departure*

■ We review the district court's legal interpretations of the Guidelines *de novo.* *United States v. Joetzki,* 952 F.2d 1090, 1096 (9th Cir.1991). In *United States v. Lira–Barraza,* 941 F.2d 745 (9th Cir.1991) (en banc), this court set forth the three-step process for reviewing sentences outside the Guidelines range. First, we consider whether the court had legal authority to depart. Second, we consider whether the factual findings for the identified circumstances justifying departure were clearly erroneous. Third, we consider whether the extent of the departure was unreasonable under 18 U.S.C. § 3742(e)(3) & f(2). *Lira–Barraza,* 941 F.2d at 746–47.

■ The first two steps are not in dispute. The district court clearly had the legal authority to depart from section 2K2.2 under *United States v. Loveday,* 922 F.2d 1411 (9th Cir.1991). In *Loveday,* this court held that the applicable guideline for possessing and manufacturing a bomb inadequately considered the unique danger and threat to public safety from homemade bombs, and therefore the district court was entitled to depart from the Guidelines. *Id.* at 1417. *See United States v. Dempsey,* 957 F.2d 831 (11th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 241, 121 L.Ed.2d 175 (1992).

Nor are the factual findings made by the district court in contention. Neither party disagrees with the court's finding that $21,000 was spent on bomb damage repairs. We need not decide as a general rule whether a defendant is entitled to sentencing credit upon a showing that the bomb damaged facility was already in need of repair before the bombing. Cox does argue under *United States v. Brady,* 928 F.2d 844 (9th Cir.1991), that, because the jury acquitted him of bombing the courthouse, the court erred in departing upward based upon damage from the

bombing. *Brady* held that a court may not attempt to circumvent a jury's verdict by making factual findings necessarily rejected by a jury's judgment of acquittal. *Id.* at 851–52. The court, however, did not make findings of facts at sentencing that the jury necessarily rejected by its verdict. The court instead analogized its departure based upon the courthouse damage to show the amount of damage Cox's bombs were capable of causing.

■ The question for this court concerns the third step in *Lira–Barraza,* whether the extent of the departure was unreasonable. The court used the loss table in U.S.S.G. § 2B1.1(b)(1) as an analogue to measure what would be an appropriate departure. This table adds offense levels depending on the amount or value of property damaged or destroyed. *See* U.S.S.G. § 2B1.3.

We do not believe it is reasonable to measure the destructive nature or capability of the bombs according to the value of the damage actually done to the courthouse. The damage occurred because of the bomb's placement by the courthouse doors. Had the bomb been placed in an expensive jewelry store, a cathedral, or the World Trade Center the extent of the damage possibly could have been much greater. Or if the bomb had exploded in an empty lot, the damage could have been significantly less costly. If district judges are constrained only by their creativity, they could add no offense levels for $100 in hypothetical damage under § 2B1.1(b)(1)(A), or could add twenty offense levels for more than $80,000,000 in hypothetical damages pursuant to § 2B1.1(b)(1)(U). That is precisely the type of situation Congress intended to avoid. *See* U.S.S.G. § 1A3 (policy statement) ("Congress sought reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders.").

We therefore do not believe it is reasonable to measure Cox's possession and manufacturing offenses according to the net damage from an explosion the jury acquitted Cox

of detonating.[2] We do not mean to suggest, however, that the physical damage actually done by a bomb is irrelevant when assessing the strength of a bomb. The damage a bomb actually causes may be important circumstantial evidence of the bomb's full destructive power. Possessing a powerful bomb capable of causing greater damage than it actually does because of where it was placed may warrant a higher sentence than possessing a weaker bomb which would cause equal damage depending also on where it is placed.

■ This circuit in *Lira–Barraza* held that a court's decision on the extent of a departure must be justified by reference to other guidelines and identifiable standards. 941 F.2d at 749. Here, the district court reasonably attempted to calculate the extent of the departure according to the Guidelines, but we believe there is a more appropriate analogue which the court should have used in this difficult sentencing context. In the 1991 Guidelines, a table for the weight of explosive materials was added to increase offense levels if twenty-five or more pounds of explosives were involved.[3] *See* U.S.S.G. § 2K1.3(b)(1). This guideline is for offenses involving the unlawful receipt, possession, or transportation of explosive materials, and transactions involving explosive materials.

■ The guideline's weight table is a reasonable analogue to use in calculating an upward departure based upon the destructive nature or capability of the bombs, although the guideline itself is not applicable to Cox since he was convicted of separate criminal offenses involving destructive devices. The weight of a bomb is a reasonable indicator of the bomb's power.[4] Although we sympathize with the trial court's efforts to find its sentencing way in this guidelines thicket, we must reverse the sentence imposed and remand for resentencing.[5]

### B. *Acceptance of Responsibility*

■ The district court denied Cox's request for acceptance of responsibility points. This denial is reviewed for clear error because " 'the sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility.' " *United States v. Hall*, 952 F.2d 1170, 1171 (9th Cir.1991) (per curiam) (citation omitted). The court relied upon the defendant's testimony at trial that showed a denial of acceptance, liability, or complicity in the offenses. The court further found that Cox perjured himself at trial. The probation officer in the presentence report also found the defendant stopped short of an affirmative statement of guilt, had perjured himself at trial, and did not deserve the reduction. We do not find any error in the court's well-founded conclusion that Cox did not clearly demonstrate a "recognition and affirmative acceptance of personal responsibility for his criminal conduct." *See* U.S.S.G. § 3E1.1(a); *Hall*, 952 F.2d at 1172.

2. Had Cox been convicted of detonating the bomb at the courthouse in violation of 18 U.S.C. § 844(f), the applicable sentencing guideline would have been U.S.S.G. § 2K1.4(a)(4), which refers to the loss table for the possible addition of offense levels.

3. It would be proper to use the *1991 Guidelines* weight table as an analogue while applying the 1990 Guidelines for calculation of the offense level without conflicting with this circuit's rule that sentences may not be determined by piecemeal application of different sets of Guidelines. *See United States v. Warren*, 980 F.2d 1300, 1306 (9th Cir.1992). Using a specific guideline as an analogue is not the same as applying a guideline.

4. The weight is not the only factor considered by the guideline, however, and an upward departure may be warranted if the explosive materials are more volatile or dangerous than conventional explosives, e.g. plastic explosives. *See* U.S.S.G. § 2K1.3, comment. (n. 10).

5. On remand, if the district court chooses to depart based upon this table, the government must introduce evidence of the weight of the bombs. Comments at oral argument and letters submitted to the court suggest one bomb weighed approximately thirty pounds. This would allow an increase of only one offense level according to the weight table. The extent of a departure, however, is "inevitably and properly a discretionary judgment" for the sentencing court. *Lira–Barraza*, 941 F.2d at 748. An analogous guideline need not be rigidly applied. *United States v. MacDonald*, 992 F.2d 967, 971 (9th Cir.1993). And certainly the court is entitled to deference in its analogical reasoning. *United States v. Kikumura*, 918 F.2d 1084, 1113–14 (3d Cir.1990). We do not express any view as to the appropriate length of the sentence. We hold only that the use of the loss table was unreasonable in these particular circumstances.

## C. Obstruction of Justice

■ Cox waived his obstruction of justice argument by not raising it in his main brief. Cox discusses it only in his reply brief, and a party may not make new arguments in the reply brief. 9 James W. Moore et al., *Moore's Federal Practice*, ¶ 228.02. [2.–3] (2d ed. 1992). But even if we did not find he had waived this argument which he did make to the district court, the court did not err by adding the two points. The court properly based its decision upon false and misleading statements Cox gave to federal agents and perjured testimony he gave at trial. The court did not rely on the disputed report from the polygraph examiner.

## D. Consecutive Sentences

The court's decision that the 121–month sentence should run consecutively to the four-year state sentence Cox is now serving is no longer at issue since we are remanding for resentencing.

## III. CONCLUSION

We reverse the sentence imposed because of the district court's use of the loss table in the Guidelines to measure the extent of an otherwise justified departure and remand for resentencing consistent with this opinion. We affirm the denial of points for acceptance of responsibility and adjustment of points for obstruction of justice.

\*    \*    \*    \*    \*    \*

AFFIRMED IN PART, REVERSED IN PART and REMANDED.

RYMER, Circuit Judge, concurring in part and dissenting in part:

Because we review the reasonableness of *sentences,* not the reasonableness of analogies, I dissent from Part II(A) of the majority's opinion.[1]

The issue on appeal is supposed to be whether the district court abused its discretion in arriving at a particular point of departure. *United States v. Martinez–Gonzalez,* 962 F.2d 874, 875 (9th Cir.1992). Instead, the majority focuses on whether the district court selected the single most suitable analogy. There is no authority for such an approach.

The Sentencing Reform Act provides that a court of appeals "shall set aside [a] sentence" if it "is outside the applicable guideline range and is unreasonable." 18 U.S.C. § 3742(f)(2). Otherwise, the court of appeals "shall affirm the sentence." *Id.* § 3742(f)(3). The Supreme Court has stated that "[t]he development of the guideline sentencing regime has not changed our view that, except to the extent specifically directed by statute, 'it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence.'" *Williams v. United States,* — U.S. —, —, 112 S.Ct. 1112, 1121, 117 L.Ed.2d 341 (1992) (citation omitted). And in *United States v. Lira–Barraza,* 941 F.2d 745 (9th Cir.1991) (en banc), we said:

> We review the degree of departure to determine whether it is "unreasonable." 18 U.S.C. § 3742(e)(3). The statute does not mean every possible sentence but one is "unreasonable"—a reasonableness standard assumes a range of permissible sentences. We give weight to the district court's choice within a permissible range. Reversal is required only if the choice is "unreasonable" in light of the standards and policies incorporated in the Act and the Guidelines.

*Id.* at 751.

The majority's approach ignores these limitations on our reviewing jurisdiction by fixating on the most appropriate analogy and giving no weight to the district court's choice of sentence. As the opinion acknowledges, physical damage done by a bomb is not irrelevant and "may be important circumstantial evidence of the bomb's full destructive power."[2] If that is so, the loss table analogy relied on by the sentencing judge cannot be wholly unsensible. Nevertheless, the sentence is reversed—not because the district court abused its discretion in choosing a

---

**1.** I concur in the rest of the opinion.

**2.** Maj. at 1462.

point of departure outside a range of permissible sentences, *Lira–Barraza*, 941 F.2d at 751; *Martinez–Gonzalez*, 962 F.2d at 875,[3] but because in retrospect it appears to the court of appeals that the district court could have chosen a *better* analogy from a *different* version of the Guidelines.

This is a far cry from expecting the district court to reason analogically, as our cases indicate it should.[4] Shooting a squirt gun should not draw a departure higher than shooting a sawed-off shotgun. But I cannot believe that sentencing judges are supposed to rummage through X number of Guidelines manuals to see if there is a more apt analogy than one or more proffered by the parties.

Thus, I part company with the majority in two fundamental respects. First, the analogy it prefers—the weight table for explosive materials—was never mentioned by Cox, the government, the district court or the version of the Guidelines under which Cox was sentenced.[5] Ironically, in *United States v. Hernandez–Rodriguez*, 975 F.2d 622 (9th Cir. 1992), we indicated that we will not uphold a departure based on an analogy which "the district court did not purport to make." *Id.* at 628. Yet here, we overturn a departure based on an analogy that occurred to no one until oral argument in the court of appeals.

Second, its approach substitutes our post hoc judgment about the best analogy for the district court's. This turns the process on its head, flies in the face of our obligation to give weight to the district court's choice of departure, and puts the court of appeals squarely in the sentencing business—a place we do not belong.

Except to say it disagrees with the analogy relied on in this case, the majority offers no help to this sentencing judge or any other in arriving at a reasonable point of departure. It is impossible for me to figure out how the district court should have gone about its task any better than Judge Brewster did, given the fact that the value of damage to which he looked for guidance is both relevant and pro-

bative, the parties' suggestions did not include reference to the analogy now preferred by the majority, and the applicable version of the Guidelines did not include the preferred analogy, either.

As I cannot agree with this approach, I dissent from Part II(A).

---

**3.** *See also United States v. Galvez–Villareal*, 3 F.3d 314, 316 (9th Cir.1993) (per curiam).

**4.** *See United States v. Cruz–Ventura*, 979 F.2d 146 (9th Cir.1992); *United States v. Lira–Barraza*, 941 F.2d at 751.

**5.** The weight table first appeared in § 2K1.3(b)(1) of the 1991 Guidelines. Cox was sentenced after the 1991 Guidelines were in effect, but the district court correctly applied the 1990 Guidelines for *ex post facto* reasons. *See United States v. Warren*, 980 F.2d 1300, 1304 (9th Cir.1992).