66 F.3d 1073
 95 Cal. Daily Op. Serv. 7580, 95 Daily Journal
D.A.R. 13,004
UNITED STATES of America, Plaintiff-Appellee,
v.
Douglas Elmo CANON, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert John DELANG, Defendant-Appellant.
 Nos. 93-50847, 93-50848.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 4, 1994.
Decided Sept. 28, 1995.
 
 Sheldon Sherman, San Diego, CA, for defendants-appellants.
 Larry A. Burns, Assistant United States Attorney, San Diego, CA, for plaintiff-appellee.
 Appeals from the United States District Court for the Southern District of California.
 Before: CANBY, LEAVY, and T.G. NELSON, Circuit Judges.
 Opinion by Judge T.G. NELSON; Dissent by Judge LEAVY.
 T.G. NELSON, Circuit Judge:
 
 
 1
 Douglas E. Canon and Robert J. Delang appeal their sentences contending that it was a violation of the Ex Post Facto Clause of the Constitution for the district court to consider a sentencing guideline provision adopted after the date of the crime as a guide in an upward departure. We have jurisdiction over this appeal pursuant to 28 U.S.C. Sec. 1291, and we vacate the sentences and remand for resentencing.
 
 FACTS AND PROCEDURAL HISTORY
 
 2
 This case is back before us following a remand for resentencing. In the first appeal, we stated the facts as follows:
 
 
 3
 On August 4, 1990, officers in California noticed Delang's vehicle had a broken taillight and signalled for him to pull over. Instead, Delang led the officers on a high speed chase. One officer told his partner he thought he saw Delang hand Canon something that looked like a firearm. Canon leaned out the passenger window and fired about eight times. Although Delang argued he never possessed the weapon, the pursuing officers testified that shots were fired from the driver's (Delang's) side as the vehicle turned left. Shortly thereafter, Delang crashed the vehicle, and he and Canon were arrested. Their left hands were smudged with powder from a discharged firearm. In the vehicle, the officers found a pistol bearing an inscription that indicated it had been manufactured in Georgia.
 
 
 4
 Canon's felony record included the following convictions for offenses committed on different occasions: structural burglary, armed robbery and possession of a sap, an inherently dangerous and deadly weapon similar to a blackjack. Delang's felony record included three armed robbery convictions stemming from separate criminal episodes. Canon and Delang stipulated to felon status.
 
 
 5
 United States v. Canon, 993 F.2d 1439, 1440-41 (9th Cir.1993) (Canon I ).
 
 
 6
 We held that being a felon in possession of a firearm under 18 U.S.C. Sec. 922(g) was not a crime of violence for purposes of 18 U.S.C. Sec. 924(c) and reversed those convictions. Id. at 1441. We also held that "Canon and Delang are armed career criminals under Guidelines Sec. 4B1.4," and remanded for their resentencing as armed career criminals. Id. at 1441, 1442.
 
 
 7
 On remand, the district court preliminarily calculated the applicable sentencing range. The November 1, 1989, sentencing guidelines were in effect at the time of the commission of the crime, and were used for these preliminary calculations.[1] Conviction of being a felon in possession of a firearm called for a base offense level of 12. U.S.S.G. Sec. 2K2.1(a)(2). The cross-reference in section 2K2.1(c)(2) to section 2X1.1 was applicable because the offenders "used or possessed the firearm in connection with commission or attempted commission of another offense...." In turn, section 2X1.1 directed the sentencing judge to use the base offense level for the "object offense." The Presentence Report (PSR) analogized the appellants' conduct to assault with intent to commit murder, under section 2A2.1. To the base offense level of 20 under section 2A2.1, the PSR added a five-level increase for discharge of a firearm, section 2A2.1(b)(2)A, and a three-level increase for official victim, section 3A1.2(b), for a total of 28. With Canon and Delang's criminal history categories of VI, the resulting sentencing range was 140-175 months. Since the top of the range was lower than the 180-month minimum of section 924(e), the court used the 180-month minimum under section 924(e) as the guidelines sentence. U.S.S.G. Sec. 5G1.1(b).
 
 
 8
 The court then held that it had the legal authority to depart upward because there were aggravating circumstances of a kind or to a degree not adequately taken into account by the Sentencing Commission, see 18 U.S.C. Sec. 3553(b), including: the defendants' extensive criminal history; the fast recidivism with weapons; the extreme danger posed by the conduct of the defendants in this case; and the danger the defendants pose to society. The court then used the armed career criminal section in the 1990 guidelines to guide its "departure" to an offense level of 34. See U.S.S.G. Sec. 4B1.4(b)(3)(A) (1990). With a criminal history category of VI, the resulting range was 262 months to 327 months. The court sentenced the men to 327 months. Canon and Delang timely appeal their sentences.
 
 STANDARD OF REVIEW
 
 9
 The district court's interpretation and application of the sentencing guidelines are reviewed de novo. See United States v. Buenrostro-Torres, 24 F.3d 1173, 1174 (9th Cir.1994). Review of departures from the sentencing guidelines is made under the three-part test established in United States v. Lira-Barraza, 941 F.2d 745, 746-47 (9th Cir.1991) (en banc). First, we review de novo whether the trial court had the legal authority to depart. Id. at 746. A district court may depart upward from the applicable guideline range only if it identifies an aggravating circumstance that was "not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. Sec. 3553(b); see also Lira-Barraza, 941 F.2d at 746. Second, we review for clear error the factual findings in support of the aggravating circumstances identified as a basis for departure. Lira-Barraza, 941 F.2d at 746. Finally, the reasonableness of the extent of the district court's departure is reviewed in light of the structure, standards and policies of the Sentencing Reform Act and the sentencing guidelines. Id. at 747.
 
 
 10
 Ex post facto challenges are reviewed de novo. United States v. Castro, 972 F.2d 1107, 1111 (9th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1350, 122 L.Ed.2d 731 (1993).
 
 DISCUSSION
 
 11
 At the time Canon and Delang committed their crimes in August 1990, the applicable version of the guidelines (1989) did not mention the Armed Career Criminal Act. The November 1990 version did include provisions relating to the sentencing enhancement of section 924(e). U.S.S.G. Sec. 4B1.4.[2] A panel of this court previously held that Canon and Delang "are armed career criminals under Guidelines Sec. 4B1.4," and instructed the district court to sentence them as armed career criminals. Canon, 993 F.2d at 1441 (emphasis added). Under the law of the case doctrine, a prior panel's decision should be followed unless, inter alia, "the decision is clearly erroneous and its enforcement would work a manifest injustice." Hegler v. Borg, 50 F.3d 1472, 1475 (9th Cir.1995). "Although the doctrine applies to a court's explicit decisions as well as those issues decided by necessary implication, it clearly does not extend to issues an appellate court did not address." Id. (internal quotation omitted). The court in Canon I did not address the ex post facto concerns with the application of Sec. 4B1.4 (1990) in this case. We note at the outset that it is possible to sentence the defendants as armed career criminals without directly applying or applying by analogy Sec. 4B1.4 (1990); however, we also note the difficulty with the remand instructions to the district court. We do not consider the law of the case doctrine to be applicable here.
 
 
 12
 Canon and Delang qualified as armed career criminals within the meaning of section 924(e) by reason of having three previous convictions for violent felonies. That statute, in effect at the time that Canon and Delang committed their crimes of conviction, subjected them to a fifteen-year mandatory minimum sentence. It did not purport to set a new guideline range; "a mandatory minimum sentence operates more as a trump of the Guidelines range rather than as an internal part of the Guidelines themselves." United States v. Rodriguez-Martinez, 25 F.3d 797, 799 (9th Cir.1994). In Rodriguez-Martinez, decided after the resentencing in this case, we explained that:
 
 
 13
 the existence of a mandatory minimum sentence does not alter the manner in which a district court determines the appropriate extent of a departure: a court must determine a defendant's offense level and appropriate criminal history category, including departures from the recommended criminal history category, just as it would in an ordinary case. If the resulting sentencing range is under the statutory minimum, the district court must give the mandatory minimum sentence; if the sentencing range includes the statutory minimum, the district court may impose a sentence above the mandatory minimum to the highest value within that range.
 
 
 14
 Id. at 800. Canon and Delang have not argued that the district court erred in departing from the 180-month minimum rather than the 175-month top of the calculated range. In fact, part of their argument is that section 5G1.1(b) simply prohibits an upward departure beyond a minimum sentence because the minimum sentence is the "guideline sentence." We reject this contention. When departure is otherwise warranted, the district court may depart upward beyond the level of the statutory minimum sentence. See id.
 
 
 15
 The departure analysis in this case, however, was flawed. "The structure of the Sentencing Guidelines makes clear that the factors to be considered in departing from the applicable criminal history categories are distinct from those relevant to departing from appropriate offense levels." United States v. Streit, 962 F.2d 894, 907 (9th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 431, 121 L.Ed.2d 352 (1992). The district court mentioned the dangerousness of the defendants' conduct in firing at the officers, but the offense level had already been enhanced five levels for the discharge of a firearm and three more levels for official victims, and the base offense level of twenty was chosen by analogy to the crime of assault with intent to commit murder. This offense conduct therefore cannot authorize an upward departure on the basis of factors not adequately taken into account by the guidelines.
 
 
 16
 The district court also discussed that the semi-automatic pistol was shot by defendants during a high-speed car chase in a densely populated residential area. The court observed that the chase only ended because Delang lost control of the vehicle and crashed into a parked car. The high-speed car chase in a densely populated residential area posed a unique danger and threat to public safety, aside from the discharge of the firearm. This threat to public safety was not adequately taken into consideration by the 1989 guidelines.[3] An offense level departure on this ground (extraordinary aspects of the offense) would be permissible in this case. See id. at 907 (citing U.S.S.G. Sec. 5K2.0). However, "when some of the reasons stated for a departure are proper and some are improper, we must vacate and remand for resentencing." United States v. Smallwood, 35 F.3d 414, 418 (9th Cir.1994) (internal quotation and brackets omitted).
 
 
 17
 As the district court's reference to 1990 guideline Sec. 4B1.4 makes clear, the operative ground for departure was the prior violent offenses of Canon and Delang. The district court correctly noted that the guidelines in effect at the time of the crime provided for an adjusted offense level of 28; the criminal history category of both defendants was VI. The resulting guideline range was 140-175 months. From this level, the district court could also depart upward upon a proper finding that the criminal history category of VI underrepresented the seriousness of their past criminal conduct. U.S.S.G. Sec. 4A1.3. This upward departure, however, is not an uncontrolled exercise of discretion by the district court; it is subject to very substantial constraints.
 
 
 18
 First, the sole fact that the crimes already accounted for in the defendants' criminal history were violent offenses is not a permissible ground for departure. United States v. Henderson, 993 F.2d 187, 189 (9th Cir.1993). The reason is that the criminal history point system of Sec. 4A1.1 already takes seriousness of prior offenses into account according to sentences of imprisonment. Id. Thus, under the guidelines prior to 1990, the violent prior offenses of Canon and Delang did not furnish a ground of departure.
 
 
 19
 Even if, contrary to Henderson, a departure had been authorized because of the violence of the defendants' prior offenses, the departure would have been subject to other constraints. The sentencing court would have had to begin with the proposition that category VI is already the most severe criminal history, and that the defendants in that category "are, by definition, the most intractable of offenders." United States v. Carrillo-Alvarez, 3 F.3d 316, 323 (9th Cir.1993). Thus, upward departure would only be permissible if the criminal records of the defendants were extreme by comparison with others in Category VI. Id.; see also Smallwood, 35 F.3d at 416.
 
 
 20
 It may be that the criminal histories of Canon and Delang included conduct egregiously more serious than that of other offenders in Category VI, although this point is certainly arguable. If it is assumed, however, that the district court were correct in so finding, that fact would not leave the district court free to raise the offense level as a means of upward departure on that ground. The court is free to make "horizontal" analogies to criminal histories at a theoretical level, say, of VII or IX, but if it skips over intermediate categories it must explain why it did so. Streit, 962 F.2d at 906-07. What the district court could not do on the ground of underrepresented criminal history is what it did: depart upward in offense level. Such a "vertical" upward departure is not permissible because "[t]he guidelines do not condone this mode of reasoning." Id. at 907.
 
 
 21
 Thus, under the guidelines in effect at the time Canon and Delang committed the offenses of conviction, any upward departure founded on the underrepresented seriousness of their past criminal conduct could not be based merely on the violence of the past crime, and had to be "horizontal," into theoretical criminal history categories above VI, each of which adds some ten to fifteen percent to the sentence. See id. at 905.
 
 
 22
 Of course, the 1990 guidelines amendments changed these restrictions for armed career criminals; an enhanced offense level was specified for those offenders. U.S.S.G. Sec. 4B1.4. As the district court correctly recognized, the application of that section to Canon and Delang would result in offense levels of 34, increasing their guideline sentencing range from the previous 140-175 months to a figure almost double that amount: 262-327 months. As the district court also correctly recognized, section 4B1.4 could not be applied directly to Canon and Delang despite the general rule that the guidelines in effect at the time of sentencing control, because such application would violate the Ex Post Facto Clause. See Miller v. Florida, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987).
 
 
 23
 Having properly concluded that the Ex Post Facto Clause precluded the application of section 4B1.4 to Canon and Delang, the district court should have dropped section 4B1.4 from the picture, and justified any upward departure on extraordinary aspects of the offense of conviction not adequately taken into consideration in the guidelines or on criminal history grounds by making the proper findings of underrepresentation and choosing an analogous level of criminal history category above VI, with an explanation for the degree of departure.[4] Instead, it employed an analogy that left Canon and Delang just as subject to the detrimental ex post facto effect of section 4B1.4 as they would have been if the guideline had been applied directly to them. The Ex Post Facto Clause simply cannot be that toothless.
 
 
 24
 The district court did not directly find the fact that Canon and Delang are "armed career criminals" within the meaning of 18 U.S.C. Sec. 924(e) to be an aggravating circumstance not taken into account by the guidelines. Nor could it. Section 924(e) requires a fifteen-year minimum sentence, but does not otherwise affect the guideline calculations. See Rodriguez-Martinez, 25 F.3d at 799. Most important, it does not add any "circumstance" not already taken into account by the guidelines in existence at the time Canon and Delang committed their crimes of conviction. "Armed career criminal" is just a label, and it is a label for criminal history. An armed career criminal, insofar as the definition applies here, is one who has three prior convictions for violent felonies. 18 U.S.C. Sec. 924(e)(1). It cannot reasonably be argued that the guidelines prior to 1990 failed to deal with criminal history or wholly overlooked the serious nature of prior convictions. This is why we held in Henderson that violence of prior offenses was not an authorized ground of departure.
 
 
 25
 Prior convictions are criminal history, not a circumstance of the crime of conviction. The 1990 guidelines could and did change the treatment of defendants with three prior convictions of violent felonies, but that major change in direction cannot be applied retroactively to the detriment of Canon and Delang. The 1990 addition of section 4B1.4 cannot retroactively confer an authority and a discretion that did not exist prior to its effective date.
 
 
 26
 As the district court and the government point out, the Tenth Circuit has permitted the use of Sec. 4B1.4 as a retroactive guide to discretion. United States v. Tisdale, 7 F.3d 957, 965-68 (10th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 1201, 127 L.Ed.2d 549 (1994). Tisdale was convicted of being a felon in possession of a firearm under section 922(g) and was subject to the armed career criminal enhancement of section 924(e). His crime was committed prior to the adoption of the November 1990 guidelines. The sentencing judge drew an analogy to Sec. 4B1.4 and accordingly sentenced him to 262 months. Id. at 959-60. The Tenth Circuit rejected Tisdale's ex post facto argument on the basis that the district court made it clear that it was not applying the later guideline, but using it only as a benchmark or analogue. Id. at 965-67.
 
 
 27
 We do not accept the reasoning of Tisdale. First, the law of this circuit, including Henderson and Carrillo-Alvarez, may well have limited the discretion of sentencing courts in criminal history departures to a greater degree than exists in the Tenth Circuit. Second, the authority for, and measure of, the upward departure in this case depends entirely on Sec. 4B1.4, which did not take effect until after the defendants had committed their crimes of conviction. The "words and the intent" of the Ex Post Facto Clause encompass "[e]very law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed." Calder v. Bull, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798) (opinion of Chase, J.). As it is applied here, guideline Sec. 4B1.4 does just that.
 
 
 28
 The district court in the present case observed that in United States v. Cox, 7 F.3d 1458, 1462 n. 3 (9th Cir.1993), we stated that it would be proper to use the 1991 guidelines as an analogue in applying the 1990 guidelines. In Cox, however, it appears that the use of the analogue was not detrimental to the defendants, and no ex post facto issue was raised.
 
 CONCLUSION
 
 29
 The analogy applied by the district court in order to reach an offense level of 34 under Sec. 4B1.4 (1990) violated the Ex Post Facto Clause.[5] The sentences are vacated and remanded for resentencing.
 
 
 30
 VACATED AND REMANDED.
 
 LEAVY, Circuit Judge, dissenting:
 
 31
 I dissent. I believe that the correct approach to this case is to begin with the fact that there was no applicable sentencing guideline in place at the time in question, rather than trying to analogize to uncharged conduct.
 
 
 32
 Douglas Canon and Robert Delang were convicted of being felons in possession of a firearm in violation of 18 U.S.C. Sec. 922(g)(1). Because both defendants had three prior convictions for having committed violent felonies, we instructed the district court in an earlier appeal to sentence both men as armed career criminals under 18 U.S.C. Sec. 924(e)(1). United States v. Canon, 993 F.2d 1439, 1442 (9th Cir.1993). That provision subjected the defendants to mandatory minimum sentences of at least fifteen years, and maximum possible sentences of life imprisonment. See 18 U.S.C. Sec. 924(e)(1) ("In the case of a person who violates section 922(g) of this title and has three previous convictions ... for a violent felony ... such person shall be ... imprisoned not less than fifteen years[.]"); United States v. Bland, 961 F.2d 123, 128 (9th Cir.) ("[A] life sentence is authorized by section 924(e)."), cert. denied, --- U.S. ----, 113 S.Ct. 170, 121 L.Ed.2d 117 (1992).
 
 
 33
 Although Congress had enacted section 924(e) in May of 1986,[1] the Sentencing Commission failed to issue any guidelines governing the interpretation and application of that provision with respect to the crime of being a felon in possession of a firearm until November of 1990, i.e., after the date of the crime in question. Accordingly, there was no guideline for the district court to apply to the defendants' statutory range of fifteen years-to-life. "[B]ecause the category of offenders ... to which the statutory minimum applied was simply omitted from the guidelines[,]" United States v. Tisdale, 7 F.3d 957, 963 (10th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 1201, 127 L.Ed.2d 549 (1994), the district court had to impose "an appropriate sentence[.]" See 18 U.S.C. Sec. 3553(b) ("In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence[.]").
 
 
 34
 In attempting to determine what constitutes an appropriate sentence, the majority cites to such cases as United States v. Rodriguez-Martinez, 25 F.3d 797 (9th Cir.1994) as support for an implicit holding that the defendants had what amounted to a vested interest in a sentencing range of 140-175 months, with section 924(e)'s statutory minimum constituting a 180-month trump. I disagree. Rodriguez-Martinez, for example, involved a straightforward application of a statutory minimum to an offense that was otherwise governed by specific sentencing guidelines. See id. at 799 ("A [statutory] minimum sentence is imposed only after the guideline range is established[.]") (emphasis in original).
 
 
 35
 In my view, the district court was called upon to, and did, impose an appropriate sentence for purposes of 18 U.S.C. Sec. 3553(b). For example, if the defendants had pulled over when the traffic officers signalled for them to stop, and had they cooperated fully with the police, who later discovered an unloaded firearm in the trunk of the defendants' car, their sentences would have been at least fifteen years in prison, notwithstanding the defendants' peacefully cooperative conduct. That much is demanded by 18 U.S.C. Sec. 924(e)(1), even in the absence of any guideline. Here, however, the defendants led the authorities on a reckless, high speed chase through a populated area while shooting at the police, and only stopped when they crashed their vehicle. In light of this horrific conduct, I am at a loss to understand how the district court can be deemed to have erred by taking these facts into consideration and, relying on the wisdom and expertise of the Commission, analogizing them to sentencing factors that, by the time of sentencing, had been taken into consideration by the Commission.
 
 
 
 [1]
 "[A]bsent an ex post facto problem, the district court must apply the version of the Sentencing Guidelines in effect on the date of resentencing." United States v. Fagan, 996 F.2d 1009, 1018 (9th Cir.1993). The 1989 guidelines were presumably relied upon to avoid an ex post facto problem. See, e.g., U.S.S.G. Sec. 2A2.1 (1990) (which increased the base offense level for assault with intent to commit murder from the level set in the 1989 guidelines)
 
 
 [2]
 Section 4B1.4, as adopted in 1990, provided:
 Armed Career Criminal
 (a) A defendant who is subject to an enhanced sentence under the provisions of 18 U.S.C. Sec. 924(e) is an armed career criminal.
 (b) The offense level for an armed career criminal is the greatest of:
 (1) the offense level applicable from Chapters Two and Three; or
 (2) the offense level from Sec. 4B1.1 (Career Offender) if applicable; or
 (3)(A) 34, if the defendant used or possessed the firearm or ammunition in connection with a crime of violence or controlled substance offense, as defined in Sec. 4B1.2(1), or if the firearm possessed by the defendant was of a type described in 26 U.S.C. Sec. 5845(a)*; or
 (B) 33, otherwise.*
 
 
 *
 If Sec. 3E1.1 (Acceptance of Responsibility) applies, reduce by 2 levels.
 (c) The criminal history category for an armed career criminal is the greatest of:
 (1) the criminal history category from Chapter Four, Part A (Criminal History), or Sec. 4B1.1 (Career Offender) if applicable; or
 (2) Category VI, if the defendant used or possessed the firearm or ammunition in connection with a crime of violence or controlled substance offense, as defined in Sec. 4B1.2(1), or if the firearm possessed by the defendant was of a type described in 26 U.S.C. Sec. 5845(a); or
 (3) Category IV.
 
 
 [3]
 Section 3C1.2 was added effective November 1, 1990, and mandated a two-level increase to a defendant's base offense level "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer."
 
 
 [4]
 The upward departure must be from the base guideline range of 140-175 months, not from the statutory mandatory minimum of fifteen years. United States v. Rodriguez-Martinez, 25 F.3d 797, 800 (9th Cir.1994)
 
 
 [5]
 It is fair to note that the difficulties encountered by the district court in resentencing Canon and Delang were the result of this court's instructions, not the district court's misunderstanding of its sentencing responsibilities
 
 
 [1]
 See Pub.L. No. 99-308, Sec. 104(a), 100 Stat. 456 (May 19, 1986), subsequently amended, Pub.L. No. 99-570, Title I, Sec. 1402, 100 Stat. 3207-39 (Oct. 27, 1986)